No. 13486

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

CAREY MATOVICH YUNKER,

Plaintiff and Petitioner,

-vs-

FRANK MURRAY, Secretary of State of the State of Montana, in his capacity as Secretary of State of the State of Montana, et al.,

Defendants and Respondents.

---

Original Proceeding:

Counsel of Record:

For Petitioner:

Daniel J. Shea argued, Missoula, Montana

For Respondents:

Robert L.Woodahl, Attorney General, Helena, Montana
William J. Anderson argued, Assistant Attorney General, Helena, Montana

---

Submitted: September 7, 1976

Decided: SEP 14 1976

Filed: SEP 14 1976

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an original proceeding seeking a declaratory judgment that each of the three district judges of the Thirteenth Judicial District of Montana is an "incumbent" within the meaning of Article VII, section 8, 1972 Montana Constitution and must run on a "retain or reject" ballot in the general election pursuant to section 23-4510.2, R.C.M. 1947.

The petition was filed on behalf of Carey Matovich Yunker, a registered voter in precinct 59, Yellowstone County, Montana, within the Thirteenth Judicial District. A copy of the complaint for declaratory judgment was attached to the petition filed herein.

The matter was set for adversary hearing and notice given to the Hon. Frank Murray, Secretary of State, and to the three district judges of the Thirteenth Judicial District. Notice was not given to the clerk and recorder of each of the five counties comprising the Thirteenth Judicial District named as defendants. Briefs were filed by petitioner, the secretary of state, and two of the three district judges of the Thirteenth Judicial District.

At the time of adversary hearing counsel appeared and presented oral argument on behalf of petitioner and on behalf of the secretary of state. As we understand it, these attorneys stipulated that procedurally the secretary of state admitted the essential factual allegations of the petition and complaint but not the legal conclusions, agreed on the issue presented, and requested this Court to render forthwith a declaratory judgment, in view of the time element involved. This Court took the matter under advisement.

We accept jurisdiction of this declaratory judgment action on the basis set forth and under authority of Forty-Second Leg. Assembly v. Lennon, 156 Mont. 416, 481 P.2d 330.

We do not consider the clerks and recorders of the five

counties of the Thirteenth Judicial District necessary parties to this action and order all stricken as defendants herein. The statutory duty of prescribing the form of ballot is vested in the secretary of state. Section 23-3517(3), R.C.M. 1947. His presence as a party herein renders unnecessary the joining of county election officials.

Under the circumstances of this case, a bona fide justiciable controversy for declaratory judgment has been presented to us for determination. Here we have a complaint for declaratory judgment; a stipulation in open court that the essential facts are undisputed and that procedural irregularities are waived by the secretary of state; an admission by two of the three district judges in their brief that "the facts, issues, and law are now squarely before this Court"; and an agreement on the specific issue to be decided under the facts. Under these circumstances we will treat the stipulation and admissions as responsive pleadings to the complaint and consider the case ready for adjudication.

The factual background will illuminate the issue presented for decision. Prior to 1961 district court judgeships in multi-judge judicial districts were not designated or identified as separate offices. Each candidate, whether incumbent or challenger, ran against the field rather than against a particular individual for a designated judgeship. In a three judge district, for example, the three candidates receiving the highest number of votes in the general election were declared elected to the three judgeships to be filled.

In 1961 the legislature changed this system by amending sections 23-2001 through 23-2003, R.C.M. 1947, (later replaced by section 23-4501, R.C.M. 1947). The new legislation provided that each district judgeship in a multi-judge judicial district was to be assigned a number and each became a separate judicial

office. At that time the three district judgeships in the Thirteenth Judicial District were assigned numbers according to the seniority of the three district judges. Thus the judgeship held by Judge Derry became Department #1; that of Judge Fenton became Department #2; and that of Judge Sande became Department #3.

This situation continued until the retirement of Judge Derry in 1967. At that time by court rule in the Thirteenth Judicial District, Judge Fenton became the senior district judge in point of service and succeeded to Department #1; Judge Sande to Department #2; and Judge Luedke, appointed to succeed Judge Derry, to Department #3.

The secretary of state, however, retained the original department designation and so far as his election records were concerned Judge Fenton remained in Department #2, Judge Sande in Department #3, and Judge Luedke succeeded to Department #1.

In 1969 Judge Fenton died and Judge Wilson was appointed to succeed him. The local district court rule resulted in an order being entered assigning Judge Sande to Department #1, Judge Luedke to Department #2, and Judge Wilson to Department #3.

The secretary of state's election records retained the original designations and showed Judge Luedke in Department #1, Judge Wilson in Department #2, and Judge Sande in Department #3.

In the 1972 election the records in the secretary of state's office and in the court records of the Thirteenth Judicial District indicated this situation:

|  | Secretary of State | Thirteenth Judicial District in Billings |
|---|---|---|
| Dept. #1 | Judge Luedke | Judge Sande |
| Dept. #2 | Judge Wilson | Judge Luedke |
| Dept. #3 | Judge Sande | Judge Wilson |

Confusion resulted in connection with filings by challengers.

One challenger filed according to the Thirteen Judicial District department numbers, rather than according to the department numbers in the election records in the secretary of state's office. This resulted in his filing against the wrong judge. The error was discovered before the filing deadline and the filing was amended accordingly.

This election year, according to the Billings judges, they decided to file according to the department over which each presided as reflected in the court records of the Thirteenth Judicial District in Billings, to avoid the confusion that existed in 1972. The records in the secretary of state's office were conformed to those department numbers used in the Thirteenth Judicial District. Accordingly, Judge Sande filed for Department #1, Judge Luedke for Department #2 and Judge Wilson for Department #3.

However, prior to the election this year, the 1972 Montana Constitution had been adopted and the election laws pertaining to district judges changed. The 1972 Montana Constitution required all unopposed incumbent district judges to run on a "retain or reject" basis. Article VII, Section 8(2), 1972 Montana Constitution; Keller v. Smith, 33 St.Rep. 828, ____Mont.____, ____P.2d____. A form of ballot was provided to implement this constitutional provision by the 1973 legislature. Section 23-4510.2, R.C.M. 1947; Keller v. Smith, supra.

The situation, in a nutshell, is that each of the three judges in the Thirteenth Judicial District was elected in 1972 to a four year term in a different department or judgeship than that for which they are running unopposed in 1976. The question for determination is whether each is an "incumbent" within the meaning of Article VII, Section 8(2), 1972 Montana Constitution, and must run on a "retain or reject" ballot in the general election

- 5 -

pursuant to section 23-4510.2, R.C.M. 1947.

Article VII, Section 8(2), 1972 Montana Constitution provides:

> "(2) If, at the first election after senate confirmation, and at the election before each succeeding term of office, any candidate other than the incumbent justice or district judge files for election to that office, the name of the incumbent shall be placed on the ballot. If there is no election contest for the office, the name of the incumbent shall nevertheless be placed on the general election ballot to allow voters of the state or district to approve or reject him. If an incumbent is rejected, another selection and nomination shall be made."

Section 23-4501(2), R.C.M. 1947, provides:

> "Each judicial office in a district which has more than one (1) district judge is a separate and independent office for election purposes."

From this constitutional provision and statute it is argued that none of the three unopposed district judges in the Thirteenth Judicial District is an "incumbent" because each has filed for a different office or judgeship than that to which he was elected in the preceding election in 1972.

We observe the constitutional provision is directed to incumbent district judges (and Supreme Court justices). We have previously held the word "incumbent" in the constitutional provision applies to all unopposed district judges irrespective of how they originally attained their judicial offices and in that context all unopposed district judges must run on a "retain or reject" ballot in the general election. Keller v. Smith, supra.

The explanatory notes of the Constitutional Convention following Article VII, Section 8, further indicate that the word "incumbent" appearing therein applies to any judge in office.

> "Convention Notes
>
> "Revises 1889 constitution * * * Contested election of judges is not changed, however if a judge in office does not have an opponent in an election his name will be put on the ballot anyway and the people asked to approve or reject him. * * *" (Emphasis added.)

This expresses the intent of the delegates to the Constitutional Convention and the meaning they attached to the word "incumbent" in this constitutional provision they framed and adopted. It clearly shows the approval or rejection ballot was intended to apply to any unopposed judge in office. Keller v. Smith, supra.

The statute, on the other hand, was enacted long before the 1972 Montana Constitution. Originally enacted in 1961 when the system of electing judges was changed as heretofore described, the statute was subsequently codified as section 23-4510(2), R.C.M. 1947, in 1969. It created a separate office for election purposes for each judgeship in a multi-judge district in order to establish head-on contests between two candidates for individual judgeships in the general election, rather than continue the prior system whereby all candidates ran in a field for the total number of judgeships to be filled in the election.

Thus the purpose and objective of the statute, on the one hand, and the constitutional provision, on the other, are quite different. It follows that there is nothing inconsistent in using the word "incumbent" in the constitutional provision to mean any judge in office and at the same time preserving the statutory mandate that each judgeship is a separate office for election purposes. The two are not repugnant or irreconcilable, but can be construed and interpreted as parts of a homogeneous whole, giving effect to each.

We find further support for our interpretation in the principle of reasonable construction. This principle applies equally to constitutional or statutory construction and has been defined and explained in this language:

> "It has been called a golden rule of statutory
> interpretation that unreasonableness of the
> result produced by one among alternative possible
> interpretations of a statute is reason for re-
> jecting that interpretation in favor of another
> which would produce a reasonable result. It is

> said to be a 'well established principle of
> statutory interpretation that the law favors
> rational and sensible construction.'" Suther-
> land, Statutory Construction, 4th Ed., Vol. 2A,
> Sec. 45.12, p. 37, and cases cited therein.

Montana has adopted this principle by statute. Section 49-134,
R.C.M. 1947.

Applying this principle to the case before us, is it reason-
able to construe the intent of the framers of the constitution to
permit nullification of the "retain or reject" ballot simply by
filing for a different district judgeship in the same judicial
district? To ask the question is to answer it. This could be
repeated in each succeeding election ad infinitum. We decline to
indulge in the assumption the framers of the constitution intended
to impose the requirement of a "retain or reject" ballot for
unopposed judges with their right hand, and at the same time ef-
fectively nullify it with their left.

Additionally, public policy supports our construction. In
Keller we quoted a recognized authority:

> "Statutes regulating the rights of citizens to
> vote are of great public interest, and therefore,
> are interpreted with a view to securing for
> citizens their right to vote and to insure the
> election of those officers who are the people's
> choice." Sutherland, Statutory Construction,
> 4th Ed., Vol. 3, Sec. 71.15, p. 366, and cases
> therein cited.

We applied this principle to Article VII, Section 8(2), 1972
Montana Constitution, in the context of the issue before us in
Keller. We apply it here for the same reasons and with the same
result.

We have considered the subsidiary arguments advanced in
opposition to our interpretation and find them not persuasive.

This opinion constitutes a declaratory judgment that each
of the three judges in the Thirteenth Judicial District of Montana
is an unopposed "incumbent" within the meaning of Article VII,
Section 8(2), 1972 Montana Constitution, and must run on a "retain

or reject" ballot in the general election in 1976 pursuant to
section 23-4510.2, R.C.M. 1947. The secretary of state, pur-
suant to section 23-3517(3), R.C.M. 1947, should prescribe the
form of ballot accordingly.

_____
                                        Justice

We concur:

_____
Chief Justice

_____
Justice

                    * * * * *

Mr. Justice Wesley Castles dissents but is not available to
express his views at this time.