DEPARTMENT OF REVENUE OF THE STATE OF MONTANA, AND ROSEBUD COUNTY, MONTANA, PLAINTIFFS AND APPELLANTS, v. PUGET SOUND POWER & LIGHT COMPANY, CORPORATION, DEFENDANT AND RESPONDENT.

No. 14136.
Submitted June 7, 1978.
Decided Sept. 13, 1978.
587 P.2d 1282.

John S. Forsythe, argued, County Atty., Forsyth, R. Bruce McGinnis, argued, Helena, for plaintiffs and appellants.

Crowley, Haughey, Hanson, Toole & Dietrick, Billings, Bruce R. Toole, argued, Billings, Gregory H. Warner, Great Falls, Douglas P. Beighle, Seattle, Wash., for defendant and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This is an appeal from an amended judgment of the District Court for the Sixteenth Judicial District, Rosebud County, affirming the decision of the State Tax Appeal Board to classify respondent's 50 per cent interest in the Colstrip Generating Complex as Class Seven (new industrial property) for property tax purposes as provided in section 84-301, R.C.M.1947. We affirm the decision of the District Court for the reasons set forth below.

Respondent, Puget Sound Power and Light Company (Puget Sound) is a public utility incorporated under the laws of the State of Washington and doing business as an electric utility company. Its service area is established principally in western Washington. Respondent is a tenant in common with the Montana Power Company of a coal-fired mine-mouth thermal generating complex located at Colstrip, Montana, consisting of two 350,000 kilowatt units and related facilities. Respondent uses its portion of the electric power generated at the Colstrip complex generally to supply its service area. (Respondents has no other generating facilities located in Montana.)

On September 25, 1975, Puget Sound submitted to the Montana Department of Revenue, appellant here, an application for Class Seven status for its 50 per cent interest in the Colstrip generating complex. On October 28, 1975, appellant, through its Property Assessment Division, advised Puget Sound that its application had been denied. After timely request by Puget Sound, an informal hearing was held before the Department of Revenue on February 3, 1976. Subsequent to the hearing, the Department of Revenue issued findings of fact and conclusions of law together with an order denying Puget Sound's application.

On July 2, 1976, the Montana State Tax Appeal Board (STAB), after a hearing on the matter, reversed the decision of the Department of Revenue. STAB concluded as a matter of law:

"The Colstrip plant constitutes an industry which manufactures, or produces electric power or engages in similar work in which capital and labor are employed and in which coal unserviceable in its natural state is extracted, processed or made fit for use to create electricity."

According to STAB, "Puget's one-half interest in the Colstrip plant is prima facie eligible for Class Seven status under section 84-301, R.C.M.1947."

On August 13, 1976, the Department of Revenue petitioned the District Court of the Sixteenth Judicial District, Rosebud County, for judicial review of the STAB decision. Rosebud County intervened as an interested party in the action. On December 1, 1977, the District Court rendered an amended judgment in favor of Puget Sound affirming the order of the Tax Appeal Board. From that judgment, appellants, Department of Revenue and Rosebud County, appeal.

Section 84-301, R.C.M.1947, as it existed at the time in question, was entitled Classification of Property for Taxation, and spelled out nine separate classifications for taxation purposes. Class Seven, within that statute, is the subsection applicable to this appeal. Under Class Seven qualified property is taxable at 16 percent of its assessed value.

The Class Seven portion of the statute was amended by Chapter 471, Laws of Montana 1975. The following is that section after amendment. The underlined portion reflects changes made in the section:

"Class Seven. (a) All new industrial property. New industrial property shall mean any new industrial plant, including land, buildings, machinery and fixtures which, in the determination of the state department of revenue, is used by a new industry during the first three (3) years of operation not having been assessed prior to July 1, 1961, within the state of Montana. New industry shall mean any person, corporation, firm, partnership, association, or other group which establishes a new plant or plants in this state for the operation of a new industrial endeavor, as distinguished from a mere expansion, reorganization, or merger of an existing industry or industries. Provided, however, that new industrial property shall be limited to industries that manufacture, mill, mine, produce, process or fabricate materials, or do similar work in which capital and labor are employed and in which materials unserviceable in their natural state are extracted, processed or made fit for use or are substantially altered or treated so as to create commercial products or materials; industries that engage in the mechanical or chemical transformation of materials or substances into new products in the manner defined as manufacturing in the 1972 standard industrial classification manual, prepared by the United States office of management and budget; and in no event shall the term new industrial property be included to mean property used by retail or wholesale merchants, commercial services of any type, agriculture, trades or professions. New industrial property does not include a plant which will create an adverse impact on existing state, county, or municipal services. The department shall promulgate regulations for the determination of what constitutes an adverse impact taking into consideration the number of people to be employed and the size of the community in which the location is contemplated. Once the department has made an initial determination that the industrial facility qualifies as new industrial property,

the department shall then upon proper notice hold a hearing to determine if the new industrial classification should be retained by the property. The local taxing authority may appear at the hearing, and it also may waive its objection to retention of this classification if the industry agrees to the prepayment of taxes sufficient to satisfy tax requirements created by the location and construction of the facility during construction period.

"In the event of a prepayment of taxes, the maximum amount of prepayment shall be the amount without the application of the Class 7(a) to such property. "If a major new industrial facility qualification under Class 7(a) the reduction of its yearly payment of property taxes for reimbursement of its prepaid taxes as provided for in section 84-41-106. R.C.M.1947, shall not begin until the Class qualification expires. And provided further, that new industrial property shall not be included to mean property which is used or employed in any industrial plant which has been in operation in this state for three (3) years or longer. Any person, corporation, firm, partnership, association or other group seeking to qualify its property for inclusion in this class shall make application to the state department of revenue in such manner and form as may be required by said department "(b) Air pollution control equipment as defined in section 69-3923. * * *""

Appellants contend Puget Sound cannot enjoy the benefits of Class Seven status because section 84-301, R.C.M.1947, was not intended to embrace industries, even though new to Montana, with already established markets, as evidenced by the legislature's statement of purpose for section 84-301, R.C.M.1947. Furthermore, even if prior to the 1975 amendment to section 84-301, the statute could be read so as to include respondent, the appellants contend the amendment constricted the classification so as to exclude Puget Sound from its benefits. Neither position of appellants is tenable.

The statement of purpose to which appellants refer is set forth below:

"Section 1. Statement of Purpose. The legislative assembly of the State of Montana hereby declares that it is the best interests of

the people of this state to encourage and stimulate the establishment of new industry within Montana. It recognizes that a new industrial plant does not reach full productivity and competitive capacity during the initial years of its operation. Since taxation of property should be related to property in proportion to its use, productivity, utility, and general setting in the economic organization of society, the purpose of this act is to provide a separate classification for new industrial property which gives proper recognition to these factors and places such property in the proper class for taxation purposes." Chap. 239, Laws of Montana 1961.

Much of the statement of purpose appears to have been lifted from the language of this Court in *Hilger v. Moore* (1919), 56 Mont. 146, 173, 182 P. 477, 483, where we determined the rule of uniform taxation *according to value* does not obtain in Montana, and classification of property for tax purposes in the manner followed in section 84-301, R.C.M.1947, was permissible. See: *Yellowstone Pipe Line Co. v. St. Board of Equalization* (1960), 138 Mont. 603, 358 P.2d 55. Appellants urge this statement indicates Class Seven was designed to protect a fledgling industry, one that must carve out a market in the face of competition from existing industry. Testimony before STAB made it clear Puget Sound has a pre-existing market and thus, say appellants, it is precluded from this classification. We do not agree with this contention. The legislative purpose in according special tax treatment to new industrial properties was clearly to stimulate the growth of new industry in Montana. The appellant, Department of Revenue has indicated it understood the purpose of this statute to be two-fold:

"(i) To encourage persons and business units outside the State of Montana to establish new industrial plants within this State, and

"(ii) To encourage the creation of new industries from within the State of Montana citizens and business units." M.A.C. section 42-2.22(6)-S22200(a).

If Puget Sound is building a "new industrial plant" within Montana, then plainly it is among the category of persons or business units meant to be encouraged under (i) of the DOR regula-

tion. When faced with a problem of statutory construction great deference must be shown to the interpretation given the statute by the officers or agency charged with its administration. *Udall v. Tallman* (1965), 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616, 625; *Norwegian Nitrogen Products Co. v. United States* (1933), 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796, 807; *Doe v. Colburg* (1976), 171 Mont. 97, 555 P.2d 753, 754. Puget Sound's activity at Colstrip represents a new industrial endeavor in Montana that did not exist in the state. Respondent is thus the type of industry which the legislature, in creating Class Seven status, hoped to encourage in Montana.

Appellants further contend that even assuming that section 84-301, R.C.M.1947, as initially enacted would cover Puget Sound's activity, the 1975 amendment constricted the classification and excluded Puget Sound from the purview of Class Seven of section 84-301. the 1975 amendment *added* the clause "industries that engage in the mechanical or chemical transformation of materials or substances into new products in the manner defined as manufacturing in the 1972 standard industrial classification manual, prepared by the United States office of management and budget," to the definition of "new industrial property." Appellant contends the amendment was not meant to broaden the classification of new industrial property, but in fact limited the classification, and further the references in the title of the Act to broadening the definition of new industrial property did not refer to this clause. Therefore appellants contend the addition of this clause limited the availability of Class Seven to only those industries that could satisfy the definition found in the 1972 standard industrial classification manual. Since the generation of electricity was not specifically mentioned in the manual, appellants argue it is excluded from Class Seven status. A thorough reading of the relevant legislative history convinces this Court that appellants are incorrect in their determination of the legislative intent and the District Court was correct in concluding this amendment simply added an additional category within which an industry might qualify for Class Seven status.

The title of an act is presumed to indicate the legislature's intent. In re *Coleman's Estate* (1957), 132 Mont. 339, 343, 317 P.2d 880, 882; *Morrison v. Farmers' and Traders' State Bank* (1924), 70 Mont. 146, 151, 225 P. 123, 125. Here the act adding the clause in question is entitled "An Act * * * Broadening the Definition of New Industrial Property." It is apparent from the title the addition of the clause was to broaden the definition of "new industrial property." Appellants contend, however, the word "broadening" refers to the clause added to the definition of new industrial property but rather to the addition of air pollution control equipment to Class Seven status. We do not agree with appellants as a reading of the statute in its entirety leads to a contrary conclusion. Section 84-301, Class 7(a)), R.C.M.1947, refers to "new industrial property." Section 84-301, Class 7(b), R.C.M.1947 refers to "air pollution control equipment." It is thus obvious that two general types of property are subject to Class Seven status—new industrial property and air pollution control equipment. The title of the act indicates one of these categories, new industrial property, is broadened by the amendments enacted. No other construction is reasonable from the four corners of the act and a reasonable construction of statutes must be adopted if possible. *Yunker v. Murray* (1976), 170 Mont. 427, 554 P.2d 285, 289; *State v. Millis* (1927), 81 Mont. 86, 97, 261 P. 885, 889.

Although a cardinal rule of statutory construction is that the intent of the legislature must first be determined from the plain meaning of the words used, *Montana Association of Underwriters v. State Department of Administration* (1977), 172 Mont. 211, 563 P.2d 577, 579, in determining the legislative intent in enacting a statute, a court can resort to the history of the statute. *Attix v. Robinson* (D.C.1957), 155 F.Supp. 592, 596; *Guillot v. State Highway Commission of Montana* (1936), 102 Mont. 149, 155, 56 P.2d 1072, 1074. Turning then to the relevant history of the clause here in question, it is again clear that the legislature intended to broaden the classification by adding an additional category to the definition of "new industrial property", and not to constrict the existing definition as appellants contend.

Two bills were considered at the same time by the Montana House of Representatives during the 1975 session, both dealing with section 84-301, R.C.M.1947. House Bill 114, which ultimately become law, dealt with aspects of section 84-301, R.C.M.1947 not pertinent here. After passage by the House it was consideration. House Bill 392, under consideration by the House at the same time as HB 114, would have amended Class Seven of section 84-301, R.C.M.1947 by adding as an additional category of new industrial property, the subsection set forth below:

*"(2) All new industrial property not included under subsection (1) of this class owned, controlled or operated by any person, corporation, firm, partnership, association, or other group which establishes a new plant or plants in this state that engage in the mechanical or chemical transformation of materials or substances into new products in the manner defined as manufacturing in the 1972 standard industrial classification manual, prepared by the United States office of management and budget. New industrial property means any new industrial plant, including land, building, machinery, and fixtures. Establishment of a new plant or plants in this state for the operation of a new industrial endeavor, as distinguished from a mere expansion, reorganization, or merger of an existing industry or industries. New industrial property does not include property which is used or employed in any industrial plant which has been in operation in this state for three (3) years or longer. Any person, corporation, firm, partnership, association, or other group seeking to qualify its property for inclusion in this class under this subsection shall make application to the governing body of the local government unit affected by the new development. The governing body of the applicants request and if it approves may grant inclusion in this class for a period not to exceed five (5) years. The department of revenue shall accept the local government's decision and classify the property accordingly."*

The sponsor of House Bill 392 testified the "intent is to expand the benefits of Class Seven property tax to industries which manufacture products but which are not included in this property tax category." Minutes of the House Taxation Committee for February

25, 1975. HB 392 was subsequently amended by striking subsection (2) as set forth above and by inserting in section (a) the clause in question following the phrase "so as to create commercial products or materials." HB 392 as amended was transmitted to the Senate for consideration.

The Montana Senate considered HB 114 and HB 392 together on the same day. The Senate Taxation Committee incorporated HB 392 into HB 114 by amending HB 114 as follows:

"(a) changing the title of House bill 114 to indicate that it was also an act 'broadening the definition of new industrial property;' and

"(b) inserting the following language in Class Seven R.C.M.1947, § 84-301 immediately after the phrase 'so as to create commercial products or materials;':

"'Industries that engage in the mechanical or chemical transformation of materials or substances into new products in the manner defined as manufacturing in the 1972 Standard prepared by the United States office of management and budget.'"

Minutes of the Senate Taxation Committee and Report of the Committee and Report of the Committee for March 28, 1975. Its principal terms having been incorporated in HB 114, HB 392 died in the Senate Tax Committee. HB 114 with minor amendments was passed by the Montana Legislature and signed into law.

■ It is clear to this Court, and we so find, that House Bill 114 as finally passed was intended to add a new standard whereby new industrial properties would qualify for Class Seven treatment. To accept appellant's contention the amendment to section 84-301, R.C.M., constricted the existing definition would violate the golden rule of statutory interpretation of reasonableness of construction. See, *Yunker v. Murray* (1976), 170 Mont. 427, 554 P.2d 285, 289. The conclusion the clause in question merely adds another category under which new industrial property can qualify for Class Seven treatment is supported by appellant Department of Revenue's own regulations interpreting section 84-301, R.C.M.

1947. These regulations state an industry will be excluded from Class Seven treatment if it falls into one of the following categories:

"(ii) Industrial endeavor which does *not* consist of industries which manufacture, mill, mine, produce, or fabricate materials; *or* extract, process, make fit for use, or substantially alter or treat materials so as to create commercial products or materials; *or engage in mechanical or chemical transformation of materials or substances into new products in the manner defined as manufacturing in the 1972 Industrial Classification Manual.*" (Emphasis added). M.A.C. § 42-2.22(6)-S22200(c).

■ Clearly the Department of Revenue considers whether an industry is engaged in manufacturing as defined in the 1972 Industrial Classification Manual as only one of a number of alternative categories by which an industry may qualify for Class Seven status. As we noted previously, administrative regulations interpreting the statute made by agencies charged with the execution of the statute are entitled to respectful consideration. *Doe v. Colbury*, supra; *Udall v. Tallman*, supra.

Appellants posit two other grounds for denying Puget Sound Class Seven treatment. First, appellants contend that Puget Sound's interest in the Colstrip complex is not in fact a new industrial development but only an expansion of existing industry and as such is not eligible for Class Seven status according to section 84-301, R.C.M.1947. Second, appellant contends respondent is not engaged in manufacturing, but rather respondent is providing a commercial service, and as section 84-301, R.C.M.1947 makes clear, commercial services are not intended to enjoy Class Seven status.

Appellants base their contention that Puget Sound is merely expanding an existing industry on three factors: (a) it has an established market in western Washington and is not trying to fashion a new market; (b) since the Montana Power Company will receive benefits from Colstrip and is an existing industry, and since Colstrip could not have been built by Montana Power alone, Puget Sound's interest is an expansion of an existing industry (Montana Power); (c) Colstrip One was completed one year prior to Colstrip

Two, therefore at the very least Colstrip Two is an expansion of an existing industrial facility, Colstrip One.

This Court does not agree with appellant that Puget Sound's activity is an expansion of an existing industry. As indicated above, this Court finds no requirement in the statement of purpose to this statute, or in DOR's own regulation, the industry seeking Class Seven status must be creating a totally new market and not relying on existing out-of-state markets. The purpose of the act is to encourage development in Montana by industries which previously had no development·or interests in the state. To accept appellant's construction of section 84-301, R.C.M.1947, would deny its benefits to all but embryonic industries with uncertain futures struggling to create in-state markets. Under such a construction it · is conceivable that in today's inflationary and uncertain business world Montana's economic landscape could become littered with the corporate skeletons of new industries unable to create new markets and unable to rely on existing ones. This cannot be the result intended by the legislature in enacting this statute. "Statutory * * * construction should not lead to absurd results if reasonable construction will avoid it." *Billings Properties, Inc. v. Yellowstone County* (1964), 144 Mont. 25, 38, 394 P.2d 182, 189.

Appellants' remaining two reasons for arguing Puget Sound is engaged in a mere expansion are without merit. There is no evidence in the record that Puget Sound Power and Light Co. and Montana Power Co. are in fact the same company or are connected in any way save for their tenancy in common in this development. Nothing in the statute denies Class Seven status merely because already existing industry in the state will benefit; in fact that would seem to be a desired result. Furthermore, to argue Colstrip Two is an expansion of Colstrip One thus not entitling Colstrip Two from Class Seven status is to engage in legal analytical sleight of hand. The agreement between Montana Power Company and respondent called for the construction of one generating plant consisting of two units. To say because one unit was completed after the other, an expansion of an existing industry occurred is to ingore reality.

■ Appellants' final basis for arguing Puget Sound should be denied Class Seven status is that respondent is not engaged in manufacturing a commercial product, but rather is providing a commercial service. This Court has long recognized that the generation of electricity is a manufacturing process. In a decision which denied manufacturing status for tax purposes to a railroad because it was not *principally* engaged in the generation of electricity as is this case, this Court stated.

"While there are cases holding that electricity is a produce of nature and its generation by the use of power is but the conversion of one form of energy into another and not the manufacture of an article of trade * * *, the electricity which exists in nature is not subject to use; *the current which will cause the wheels of industry to turn, or will light a city, must be produced by the employment of labor and machinery and is, therefore generally said to be manufactured.* * * *

"It follows that machinery capable of being used for, and actually used in, the generation of electricity as a business, falls within the designation of 'manufacturing machinery.'" (Emphasis added). *Chicago*, M., St. P. & P. R. Co. v. Custer County (1934), 96 Mont. 566, 570, 32 P.2d 8, 9.

■ This conclusion is supported by the weight of authority throughout other jurisdictions. See, e.g., *Curry v. Alabama Power Co.* (1942), 243 Ala. 53, 8 So.2d 521; *Zamani v. Otter Tail Power Co.* (1931), 182 Minn. 355, 234 N.W. 457. Although no decision of this Court to date has decided the specific question of whether electricity constitutes a "commercial product," the general rule is that electricity does constitute such a product. In *Minnesota Power and Light Company v. Personal Property Tax* (1970), 289 Minn. 64, 182 N.W.2d 685, the issue was whether the electrical generating equipment of a power company constituted machinery used in the production of "marketable products." The Supreme Court of Minnesota held that electricity was clearly such a product:

"Thus, from any viewpoint, it would seem that electricity such as is involved in this case is a manufactured, marketable product

which is clearly within the meaning of that term as used in [the tax statute] * * * Inasmuch as we have held, and the great weight of authority supports us, that the production of electricity by mechanical means involves a manufacturing process, it is difficult to see how we could conclude that this process does not produce a product." 182 N.W.2d 691.

An older Colorado case makes the same point:

"It is well settled that electricity made by artificial means is a product of manufacture, and is personal property." *Hetherington v. Camp Bird Co.* (1922), 70 Colo. 531, 202 P. 1087, 1088.

We agree with the general rule and hold electricity is a commercial product. *State ex rel. Spillman v. Interstate Power Co.* (1926), 118 Neb. 756, 226 N.W. 427, 433.

In arguing Puget Sound was not engaged in manufacturing, appellants have contended that what Puget Sound *is* doing is providing a commercial service. This Court has indicated the distinction between commercial and industrial enterprises in *Burritt v. City of Butte* (1973), 161 Mont. 530, 508 P.2d 563. In that case we determined that businesses there involved—a commercial shopping center with retail stores, a motel, a gas station, a barber shop, a real estate office, a movie theater and a veterinary office and animal hospital—were not "industrial" as the appellant there contended, but were in fact "commercial" pursuits. Id. at 534, 508 P.2d 563. We went on to define "industrial purpose" for the purposes of the statute in question in that appeal:

"Any factory, business or concern which is engaged primarily in the manufacture or assembly of goods or processing of raw materials unserviceable in their natural state which are extracted, processed, or made fit for use or are substantially altered or treated so as to create commercial products or materials." 161 Mont. at 535, 508 P.2d at 566.

We note the similarity between that definition and the definition given by the legislature in section 84-301, R.C.M.1947. The process involved in this case whereby coal, a raw material, is turned into electricity, a commercial product, is clearly one that is "in-

dustrial" as opposed to "commercial". The activity of Puget Sound at Colstrip is obviously more closely related to the definition of "industrial" given above, than to the types of businesses *Burritt* indicated were commercial services. Therefore we find the generation of electricity at Colstrip by Puget Sound is within the purview of section 84-301, R.C.M.1947.

Finally, we note that section 84-301 was again amended by the legislature in 1977, with a complete redrawing of applicable classifications. The reduction in taxable rate for new industrial property is continued, but at a lower rate, in new section 84-301.19. This fact buttresses our opinion that the legislative purpose in extending a property tax break to new industries is to encourage such new industrial development in our state, with its attendant increase in job opportunities and the swelling of our gross state product. If those things result from the legislative action in point, it should make no difference legally or economically that the property tax benefit accrues to seemingly rich and powerful industries as well as to weak or fledgling manufacturing businesses. We must keep the legislative objective in focus. Moreover, if the legislative purpose is to be properly pursued, no constitutionally permissible means can be devised that will make the property tax break available to the weak and not to the wealthy. Uniformity of taxation among like taxpayers on like property is still a constitutional necessity. Article VIII, Section 3, 1972 Montana Constitution. In the long run, the addition of a large plant such as here involved to the tax rolls of Rosebud County over the probable useful life of such a plant is a benefit not lightly to be regarded. If the property tax break encouraged in any degree the new development, so much the better.

Affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON and DALY concur.

MR. JUSTICE SHEA would dissent and reverse the judgment of the District Court.