No. 83-499

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

LENNY BAY,

   Plaintiff and Respondent,

 -vs-

STATE OF MONTANA, DEPARTMENT OF
ADMINISTRATION, PUBLIC EMPLOYEE'S
RETIREMENT DIVISION & LAWRENCE P.
NACHTSHEIM,

   Defendants and Appellants.

---

APPEAL FROM: District Court of the Second Judicial District,
      In and for the County of Silver Bow,
      The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

   For Appellants:

      M. Valencia Lane, Dept. of Administration, Helena,
      Montana (argued)

   For Respondent:

      Leonard J. Haxby, Butte, Montana (argued)

---

        Submitted: May 10, 1984

         Decided: September 7, 1984

Filed: SEP _ 1984

*Ethel M. Harrison*
_____
      Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The District Court, Second Judicial District, Silver Bow County, determined that Lenny Bay, a retired police officer, was entitled to retirement benefits payable on his death to his surviving spouse in monthly payments equal to one-half of his monthly salary when he retired. The defendants, Public Employees' Retirement Division (PERD) collectively, appeal from a judgment of the District Court to that effect.

Lenny Bay is a retired law enforcement officer. From 1957 to 1977, he was a deputy sheriff for Silver Bow County. In 1977, the Silver Bow County and Butte city governments were consolidated, and the sheriff's office and city police department were merged. From 1977, until his retirement in 1982, Bay was a member of the new consolidated government law enforcement agency which was deemed a police force under the Metropolitan Police Law of Montana in Butler et al. v. AFSCME and Butte-Silver Bow, Cause No. 63277 (District Court, Second Judicial District, Silver Bow County (1979)).

During his years of employment, Bay contributed to three different retirement systems. From 1957 to 1974, he was a member of the Public Employees' Retirement System (PERS), in which he accumulated 21 years for benefit purposes. Seventeen of those years were obtained through actual service, three were qualified from Bay's previous military service, and one year was qualified for service in the Works Progress Administration. In 1974, Bay converted his retirement to the newly established Sheriffs' Retirement System. He transferred his previous 21 years under PERS to this new system, and earned three years of actual service for benefit credits between 1974 and 1977.

- 2 -

Following consolidation of the city and county governments, a suit was brought in District Court, for the Second Judicial District, Silver Bow County, to determine whether law enforcement officers of the new government were sheriffs or municipal policemen. The question was determined in the Butler, supra, decision and since that time Butte-Silver Bow consolidated government and the State of Montana made appropriate adjustments in the retirement programs to reflect the status of Butte-Silver Bow law enforcement officers as policemen. Bay's last five years of retirement contributions were deposited in the Police Officers' Retirement Fund. He retired August 1, 1982, with approximately 29 years of combined service for benefit purposes.

Bay's 24 years of service as a deputy sheriff would not qualify him for sheriff's retirement benefits, because a 25 year minimum service period is required for receiving benefits under that retirement system. Section 19-7-501(1), MCA. Similarly, Bay's five years as a policeman do not qualify him for a policeman's pension, as the minimum service period for eligibility is 20 years. Section 19-9-801(1), MCA. Nevertheless, Bay does qualify for a service retirement benefit under the provisions of section 19-7-308(1), MCA. The statute provides that:

> "(1) A law enforcement officer who has not changed his employment but who has, because of a city-county consolidation, been transferred either from a city police force to a county sheriff's department or from a county sheriff's department to a city police force as a law enforcement officer is eligible for a service retirement benefit if his combined service in the Sheriffs' Retirement System and the municipal Police Officers' Retirement System satisfies the minimum membership service requirement of the system to which he last made contributions . . ."

- 3 -

Bay's 29 years of combined service exceeds the minimum service requirement for the system to which he last made contributions, the Police Officers' Retirement System, so he is entitled to a service retirement benefit under section 19-7-308(1), MCA.

When Bay applied for his retirement benefits, PERD calculated options to be offered to him under section 19-7-701, MCA, a statute contained within those defining the Sheriffs' Retirement System. Under option 1, Bay or his beneficiary, would receive $801 per month, with $599 of that sum derived from the Sheriffs' Retirement System and $202 taken from the Police Officers' Retirement System. This plan provides the same monthly retirement for Bay or his beneficiary as long as he or the beneficiary lives. Under option two, Bay would receive $868 per month, with $666 coming from the Sheriffs' Retirement System and $202 from the Police Officers' Retirement System. In the event of his death under this plan, his beneficiary would receive a monthly allowance of one-half his monthly benefit, or $434.

Bay insisted that he was entitled to receive benefits under the Police Officers' Retirement System so that he would receive $956 per month under the provisions of section 19-9-804, MCA, and that upon his death, his surviving wife would receive one-half of his final average salary, or $782 per month under the provisions of section 19-9-911(2), MCA.

When Bay's case came before the PERD, the Division's proposal for options under the sheriffs' system was affirmed. Bay petitioned for judicial review of the Board decision. The Department of Administration objected, arguing that a PERD decision is not subject to judicial review as a contested case under the Montana Adminstrative Procedure Act.

The Department indicated that the matter could be brought to the attention of the courts under a petition for relief under the Declaratory Judgment Act. Action was brought in the District Court, and the parties agreed to submit the matter on motions for summary judgment.

The court entered summary judgment in favor of Bay's contentions, and against PERD, which results in this appeal.

We affirm the decision of the District Court. The statutes clearly provide that Bay's entitlement to retirement benefits, and the benefits payable to his spouse on his death, are controlled by the Police Officers' Retirement System.

We noted above, section 19-7-308(1), MCA, adopted by the legislature in 1979, to provide for police officers' retirement, prior to or following a city-county consolidation. In addition to section 19-7-308(1), MCA, which we have above quoted, the same statute goes on to state:

> "(2) Eligibility for disability retirement, death benefits, and a refund of contributions is governed by the provisions of the retirement to which the officer last made contributions.
>
> "(3) The service retirement benefit of an officer described in subsection (1) shall be calculated separately for each system based on the service credited under each system. The final salary or final average salary for each calculation shall be based on the highest salary earned while a member of either system. Each system shall pay its proportionate share, based on the number of years of service credited, of the combined benefit. The combined benefit may not exceed 60% of the final salary or final average salary."

The retirement system to which Bay last made contributions is the Police Officers' Retirement System for Silver Bow consolidated government. His "death benefits"

must then be calculated under the provisions of law applicable to the police system.

"Death benefits," under the Police Officers' Retirement System are provided for in section 19-9-911, MCA. That statute provides in pertinent part:

> "(2) Upon the death of a police officer before or after retirement, his surviving spouse, if there is one, shall, as long as such spouse remains unmarried, be paid from the fund a sum equal to one-half of the officer's final average salary . . . ." (Emphasis added.)

There can be no argument but that payment to the surviving spouse under the Police Officers' Retirement System is classified as a "death benefit." That is the statutory caption of section 19-9-911, MCA. There can further be no argument that "death benefits" under section 19-7-308, MCA, are to be governed by the provisions of the retirement system to which the officer last made contributions. In this case, that is the Police Officers' Retirement System.

Because of the clear provisions of the applicable statutes, there is no room for statutory interpretation by this Court, by the District Court, nor by PERD. When the intention of the legislature can be determined from the plain meaning of words used in the statute, the courts may not go further and apply any other means of interpretation. Tongue River Elec. Coop. v. Mont. Power Co. (1981), 195 Mont. 511, 636 P.2d 862.

In the face of these statutory provisions, which are to us clear as daylight, PERD contends that we should allow computation of Bay's retirement benefits under the Sheriffs' Retirement System for these reasons: (1) The provision for consolidated city-county governments is found in the code under the Sheriffs' Retirement System. (2) The

- 6 -

interpretation by PERD of statutes is entitled to great weight and deference from us. (3) The term "eligibility" used in section 19-7-308(2), MCA, refers only to determine the eligibility of a person for retirement benefits, and not to the method for calculating death benefits. (4) The District Court decision in favor of Bay results in a "windfall" to him, for which the sheriffs' systems and the police systems are actuarially underfunded.

Section 19-7-308, MCA, is the codification of ch. 122, § 1, Laws of Montana (1979). In its original form, as adopted by the legislature in 1979, the said ch. 122 provided in § 3 thereof that a part of the new enactment should be codified in ch. 7, title 19, MCA, and another part should be codified in ch. 9, title 19, MCA. It is obvious that the legislature made such provisions only for ease of reference as between the systems when law enforcement officers entitled to retirement benefits under a consolidated city-county governmental system were involved. It cannot be construed from directions to the codifier that the legislature intended to interpret differently from what it clearly provided in the substantive provisions of the new enactment.

Although we give deference to the interpretation given a statute by the officers or agency charged with its administration, Dept. of Rev. v. Puget Sound Power and Light Company (1978), 179 Mont. 255, 587 P.2d 1282, this does not mean that courts must rubberstamp any interpretation the agencies may give a statute. Rules of statutory construction have no application if the language of the statute is clear and unambiguous. State ex rel. Swart v. Casne (1977), 172 Mont. 302, 564 P.2d 983. It has always been our rule that it is the province of courts to construe and apply the law as

they find it and to maintain its integrity as it has been written by a coordinate branch of the state government. When the terms of the statute are plain, unambiguous, direct and certain, it speaks for itself and there is no room for construction. Chmielewska v. Butte and Superior Mining Company (1927), 81 Mont. 36, 261 P. 616.

We cannot regard the provisions of section 19-7-308(2), MCA, as merely a provision for eligibility, as distinguished from the calculation of death benefits. The eligibility of a surviving spouse under the Sheriffs' Retirement System depends on the will of the retiring officer. He has the option of designating a beneficiary, sections 19-7-602, 19-7-701, MCA, and if he chooses not to exercise such an option, the surviving spouse is not eligible for benefits. Under the Police Officers' Retirement System the surviving spouse is eligible for benefits without any action on the part of the retiring officer designating the spouse as a beneficiary. Section 19-9-911, MCA. Since the right of a surviving spouse of a police officer under the Police Officers' Retirement System to benefits is a matter of statutory right and not subject to the whim of the retiring officer, section 19-7-701, MCA, cannot be used to foreclose the spouse's eligibility for death benefits under the Police Officers' Retirement System. It is eminently clear that section 19-7-308(2), MCA, provides that the provisions for death benefits shall be governed by the laws applicable under the retirement system to which the officer last made contributions.

We are buttressed in our opinion that section 19-7-308(2), MCA, applies to calculations of death benefits by the provisions that follow in subsection (3) of the same

- 8 -

statute. It is there provided that "the final salary or final average salary for each calculation shall be based on the highest salary earned while a member of either system." (Emphasis added.) There is no provision in the Sheriffs' Retirement System for the use of a "final average salary" in the determination of benefits under the Sheriffs' Retirement Act. The only place that the term "final average salary" can be found is in section 19-9-911, MCA, pertaining to the calculation of the death benefit payable to the spouse of a retired police officer. The distinction is that the retirement benefits payable to a retired sheriff's officer or a retired police officer is based upon his final salary. The determination of the death benefit payable to the surviving spouse of a police officer, however, is based upon his "final average salary." When the legislature included the term "final average salary" in section 19-7-308(3), MCA, providing for persons retiring from city-county consolidated governments, it necessarily had in mind that in calculating the death benefits for the wife of a police officer, the final average salary, and not the final salary of the officer is used. If the contention of PERD in this case were to be upheld, there would never be an occasion in calculating death benefits to refer to the "final average salary" of the retired officer. We are confident the legislature did not intend such a result.

The final arguments made by PERD are that the increased benefits to the wife and to Bay result in a "windfall" to him, and that the systems are underfunded to pay the benefits provided under the Police Officers' Retirement System to Bay. It is incomprehensible that PERD detects a "windfall" if it is required to treat Bay as it would treat any other retired

police officer in determining his retirement benefits and death benefits. He will be receiving what the law provides for persons in his situation, and the difference between his lawful entitlement and what PERD offered to pay would barely pay his heating bill in winter months. If it is a windfall, it is miniscule.

As for the argument that the sheriffs' and police retirement systems will be actuarially underfunded if we permit Bay's retirement benefits to be calculated under the Police Officers' Retirement System, it need only be said that it is the business of PERD to advise the legislature with respect to provisions for funding the systems. In fact, the enactment of the provisions here cited relating to officers retiring from city-county consolidated government law enforcement agencies is the result of PERD action before the legislature. It is unseemly that the same agency would now argue that the legislation which it spawned and sponsored results in actuarial underfunding. The legislature foresaw that underfunding might result from its establishment of a statewide Police Officers' Retirement System and provided in section 19-9-503(7), that if underfunded liabilities against cities resulted from a prior plan, amortized payments to make up the unfunded liability must be made by the state auditor after July 1, 1985, from the premium taxes on insurance risks enumerated in section 19-11-512, MCA.

We affirm the District Court.

_____
Justice

We Concur:

- 10 -

_____
Chief Justice

_____
_____

_____

_____
Justices

Mr. Justice L.C. Gulbrandson dissenting.

I respectfully dissent.

The parties agree that section 19-7-308, MCA, is the touchstone for determining Bay's eligibility for a service retirement benefit. This statute, generally referred to as the "coordination statute," was introduced as House Bill 300 in 1979 and was adopted primarily to assist individuals like Bay who might otherwise lose an opportunity to obtain benefits if local government consolidation effectively terminated one's eligibility for either sheriffs' or police officers' retirement benefits. Although the statute coordinates benefits between the two retirement systems, the legislature intended that the statute be codified in Title 19, chapter 7 of the Montana Code Annotated, which is devoted solely to laws governing sheriffs' retirement. See 1979 Mont. Laws ch. 122, sec. 3.

Subsection (1) of section 19-7-308 merely defines the standard of eligibility for a service retirement. It does not specify the terms of any benefits awarded to a retiree. The parties agree that subsection (1) is used only to determine whether Bay's combined service record "satisfies the minimum membership service requirement of the system to which he last made contributions." In this case, Bay contributed to the police officers' retirement fund for the five years preceeding his retirement. His twenty-nine years of combined service as a deputy sheriff and a policeman clearly satisfies the twenty year minimum eligibility period for earning a police officer's pension.

To determine the appropriate benefit package, one must

first refer to section 19-9-404, MCA, before proceeding to subsections (2) and (3) of section 19-7-308. Section 19-9-404, which appeared as Section Two of House Bill 300, 1979 Mont. Legis. Sess., and is codified as part of the laws governing police officers' retirement, expressly provides that "[a] law enforcement officer who has combined service in the municipal police officers' retirement system and the sheriffs' retirement system because of a city-county consolidation, as provided in 191-7-308, is eligible for benefits as provided in 19-7-308." (Emphasis added.) This section indicates that, at the very least, a law enforcement officer whose service spans obligations as a deputy sheriff and as a municipal policeman is not entitled to the full benefits of a retired policeman.

Once eligibility for a service retirement benefit has been determined, the actual benefit can be calculated. Section 19-7-308(3) provides that the retirement benefits are calculated separately for each retirement system based on the service credited under each system. The base salary used to calculate benefits is the highest salary earned while the retiree was a member of either system. In Bay's case, his highest salary was $1,565 per month, earned during his tenure as a policeman. Apparently this base was used to calculate benefits under both retirement systems. The $751 earned from sheriffs' retirement is based on the $1,565 monthly salary and twenty-four years of service at the two percent contribution rate for sheriffs' benefits. The $202 earned from police officers' retirement is also based on the $1,565 salary, but reflects the remaining five years of service as a policeman at a contribution rate of

two-and-one-half percent. None of the parties dispute the applicability of section 19-7-308(3) or the particular calculations insofar as providing benefits to Bay alone are concerned. The dispute arises in providing a residual benefit for Bay's beneficiary, his wife.

The point of dispute centers on differing interpretations of Subsection (2) of 19-7-308, which provides that "[e]ligibility for disability retirement, death benefits, and a refund of contributions is governed by the provisions of the retirement system to which the officer last made contributions." (Emphasis added.) Appellants take the position that the scope of the term "eligibility" as found in the statute is strictly confined to resolving potential conflicts in qualification for such things as death benefits. Moreover, appellants insist that Subsection (2) of 19-7-308 does not describe the method for calculating death benefits.

Appellants emphasize that each retirement system uses different eligibility criteria for determining beneficiaries. Under the sheriffs' retirement system, for example, a sheriff may name a beneficiary by written declaration to the Public Employees' Retirement Board, and may change the beneficiary in a like manner. See section 19-7-602, MCA. If a beneficiary is designated, the retiree takes a reduced benefit to provide benefits for the beneficiary. Section 19-7-701, MCA. Unlike the sheriffs' system, however, a member of the police system does not have the opportunity to designate a beneficiary. Section 19-9-911, MCA, provides that some portion of the deceased retiree's benefits will automatically be paid to the

retiree's surviving spouse and dependent minor children. Section 19-7-308(2), according to appellants, is designed to resolve conflicts when a retiree from a consolidated government law enforcement agency dies. For example: if Bay or another officer in a similar position died after having designated, under the sheriffs' retirement system, a beneficiary other than his spouse, there would be a conflict, since a deceased policeman's benefits must go to the spouse. Section 19-7-308(2) simply resolves the conflict by mandating that <u>eligibility</u> for death benefits be determined by the provisions of the retirement system to which the deceased last made contributions.

In Bay's case, there was no problem with eligibility, because his designated beneficiary is his spouse. Nevertheless, the state authorities still had to decide how to <u>calculate</u> death benefits for Bay's spouse. The method they used is taken from section 19-7-701, MCA, which provides for optional retirement plans for beneficiaries of deceased sheriffs or sheriffs' deputies. The Department presumably used this statutory scheme because the police officers' retirement law contains no express provisions on the subject, and because section 19-7-308, the coordination statute, <u>is included as part of the sheriffs' retirement law</u>, thus leading one to believe that its provisions should be used to resolve ambiguities in the coordination statute. Appellants maintain that Bay must take some kind of reduction in the sheriffs' portion of his total monthly benefit if he is to insure that his surviving beneficiary receives any amount from sheriffs' retirement. Bay's spouse will always receive the $202 portion based on his

-15-

contributions to the police officers' retirement system.

The majority interpret section 19-7-308(2) to mean that any survivor's benefits must be _paid_ in accordance with the system to which Bay last made contributions--the policemens' retirement system. This position obviously requires one to interpret "eligibility" to include the method of calculating benefits.

According to the majority, if survivor's benefits are to be calculated under police retirement, then attention is necessarily shifted to section 19-9-911(2), MCA, which provides that death or survivor's benefits will be paid to the surviving spouse in "a sum equal to one-half of the officer's final average salary." In Bay's case, one-half of his final average salary, $1,565, is approximately $782. Because there are no provisions or requirements in the police retirement system for reducing service retirement benefits in order to provide for survivors benefits, the majority holds that he is entitled to a full $956 per month until his death.

The uncertainty arising from the undefined key term, "eligibility," and the absence of clear provisions governing calculation of benefits for surviving beneficiaries of deceased retirees compels the conclusion that the coordination statute is at best ambiguous. According proper deference to the responsible agency's interpretation of the coodination statute, I would hold that appellants' interpretation is both legally and actuarily sound.

I note that section 19-9-104, refers to "members" of the police retirement system. A "member" of the police retirement system is defined as one who qualifies for the

police officers' service retirement.   See   section 19-9-104(11).  To have been a true member of the "system" in order to activate the benefit provisions of section 19-9-911, Bay would have had to have been a policeman for twenty years, and he clearly does not meet this eligibility criterion.

Section 19-9-404, MCA, provides that eligibility for benefits for an individual in Bay's situation is governed by the terms of the coordination statute, section 19-7-308. The legal effect of interpreting section 19-7-308(2) as broadly as the majority has done essentially incorporates the entire police officers' retirement law into the coordination statute and effectively treats Bay as if he had been a policeman for the twenty-nine years of his combined service as a sheriff and as a policeman.   Under the circumstances, I can only conclude that the substance of the coordination statute has been abrogated by the majority.

Although the legislative history behind the adoption of the coordination statute sheds little light on a correct interpretation of section 19-7-308(2), there is substantial evidence that the sponsors of the legislation intended no financial impacts in the funding of the retirement systems, meaning no "windfall payments" to retirees.  See Hearings on House Bill 300 Before the House Comm. on State Administration, 47th Mont. Leg. Sess. (Jan. 25, 1979) (statement of PERD administrator Lawrence Nachtsheim, appearing at request of bill sponsor Rep. Joe Quilici), Hearings on House Bill 300 Before the Senate Comm. on Local Government, 47th Mont. Leg. Sess. (Feb. 27, 1979) (statement of bill sponsor Rep. Joe Quilici).

It is obvious that Bay could qualify his previous service as a deputy sheriff under the police officers' retirement system by contributing the actuarial cost of granting the service in that system. See section 19-9-405, MCA. By adopting section 19-9-405, MCA, the legislature recognized the actuarial costs of providing benefits under the police officers' retirement systems, which is far more generous than the sheriffs' system. To interpret section 19-7-308 to allow Bay to reap full benefits without reduction for survivors benefits is tantamount to treating Bay as a policeman with twenty-nine years of service without having made corresponding contributions for the same period of time to the police officers' retirement fund. Such a result is both legally incorrect and fiscally irresponsible, and, in my view, should not be sustained.

Appellants' position, which requires that Bay take a reduction only in the sheriffs' portion of his retirement in order to provide for benefits for his spouse upon his death, is reasonable and entitled to deference. It best explains the concept of eligibility as used in Subsection (2) of the coordination statute and harmonizes the statute with the provisions of the sheriffs' and police officers' retirement systems. Bay could provide for survivors benefits through either of the options suggested under the sheriffs' retirement fund and his wife would always receive the $202 monthly from the police officers' retirement fund after Bay's death.

_____
Justice

Mr. Chief Justice Frank I. Haswell:

I concur in the foregoing dissent of Mr. Justice Gulbrandson.

_____
Chief Justice

18

Mr. Justice Fred J. Weber:

I concur in the foregoing dissent of Mr. Justice Gulbrandson.

                                          _____
                                          Justice