No. 13382

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

ROBERT S. KELLER,

                    Plaintiff and Petitioner,

    -vs-

ETHYL SMITH, in her capacity as Clerk and
Recorder of Flathead County, Montana,

                    Defendant and Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

    For Petitioner:

        Robert S. Keller argued, Kalispell, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
         Montana
        William Anderson, Assistant Attorney General,
         argued, Helena, Montana
        Patrick Springer, County Attorney, Kalispell,
         Montana
        Stewart Pearce, Deputy County Attorney, appeared,
         Kalispell, Montana

    For Amicus Curiae:

        Daniel J. Shea argued, Missoula, Montana

---

                            Submitted: August 10, 1976

                              Decided: AUG 3 0 1976

Filed: AUG 3 0 1976

Thomas J. Kearney
                              Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an original proceeding seeking a declaratory judgment from this Court on the constitutionality of sections 23-4510.1 and 23-4510.2, R.C.M. 1947. These statutes provide for a general election ballot on retention or rejection of all unopposed incumbent district court judges and supreme court justices seeking election.

Petitioner is Robert S. Keller, a voter, resident and taxpayer of Flathead County, Montana. Defendants who have entered appearances here are the Governor, Secretary of State and Clerk and Recorder of Flathead County in their official capacities.

Ex parte presentation of the petition was made and this Court set the matter for adversary hearing. We granted leave to Daniel J. Shea, a registered voter and taxpayer of Missoula County, Montana to appear as amicus curiae; ordered the Governor and Secretary of State joined as additional defendants; and ordered notice to be given to the Attorney General and the 56 county attorneys in Montana. Briefs were filed and oral arguments heard.

Thereafter this Court accepted original jurisdiction of this proceeding; ordered the petition amended; ordered all un-opposed incumbent district judges joined; ordered service on all the above persons; and ordered responsive pleadings to be filed by all defendants. Supplemental briefs were filed and additional oral argument presented on behalf of the parties and amicus curiae. At the conclusion of the final hearing on August 10, 1976, the case was taken under advisement.

The issue is whether sections 23-4510.1 and 23-4510.2 are unconstitutional as applied to unopposed incumbent district court judges and supreme court justices running in the general election who were not originally appointed by the Governor to fill vacancies and confirmed by the state senate.

The crux of petitioner's argument is that Article VII, Section 8, 1972 Montana Constitution, providing for retention or rejection of unopposed incumbent judges and justices by the voters is clear and unambiguous; that it applies only to unopposed incumbent judges and justices originally selected by the Governor to fill vacancies and subsequently confirmed by the state senate; and that sections 23-4510.1 and 23-4510.2 are therefore unconstitutional as applied to unopposed incumbent judges and justices not originally selected by the Governor and confirmed by the state senate to fill vacancies by reason of Article IV, Section 5, 1972 Montana Constitution, providing that the person receiving the largest number of votes shall be declared elected.

Defendants, on the other hand, contend that the language of Article VII, Section 8, 1972 Montana Constitution, is ambiguous; that the meaning of this constitutional provision can be ascertained from the proceedings at the Constitutional Convention; that these proceedings clearly show that a substantial majority of the delegates intended to give the voters an opportunity to measure all incumbent district court judges and supreme court justices against either a challenger or their own judicial record; that the presumption of constitutionality of sections 23-4510.1 and 23-4510.2 applies; and therefore these two statutes are constitutional as applied to all incumbent judges and justices whether originally elected or appointed.

Amicus supports the defendants' position and additionally points out that the legislature had no difficulty in determining the meaning of Article VII, Section 8, 1972 Montana Constitution, as indicated by enactment of sections 23-4510.1 and 23-4510.2; and that there is no rational basis for distinguishing between unopposed incumbent judges and justices initially elected and those initially appointed insofar as subsequent elections are concerned.

- 3 -

The relevant constitutional provisions are:

Article VII, Section 8, which provides:

"Selection. (1) The Governor shall nominate a replacement from nominees selected in the manner provided by law for any vacancy in the office of supreme court justice or district court judge. If the governor fails to nominate within thirty days after receipt of nominees, the chief justice or acting chief justice shall make the nomination. Each nomination shall be confirmed by the senate, but a nomination made while the senate is not in session shall be effective as an appointment until the end of the next session. If the nomination is not confirmed, the office shall be vacant and another selection and nomination shall be made.

"(2) If, at the first election after senate confirmation, and at the election before each succeeding term of office, any candidate other than the incumbent justice or district judge files for election to that office, the name of the incumbent shall be placed on the ballot. If there is no election contest for the office, the name of the incumbent shall nevertheless be placed on the general election ballot to allow voters of the state or district to approve or reject him. If an incumbent is rejected, another selection and nomination shall be made.

"(3) If an incumbent does not run, there shall be an election for the office."

Article IV, Section 5, provides:

"Result of elections. In all elections held by the people, the person or persons receiving the largest number of votes shall be declared elected."

The statutes attacked in this case were enacted by the 1973 Legislature and provide as follows:

"23-4510.1. Form of ballot on retention of incumbent supreme court justice. In the event there is no candidate for the office of supreme court justice or chief justice other than the incumbent, the name of the incumbent shall be placed on the official ballot for the general election as follows:

"Shall (chief) justice (here the name of the incumbent justice is inserted) of the supreme court of the state of Montana be retained in office for another term?

"/__/ YES

"/__/ NO

"(Mark an "x" before the word "YES" if you wish the

- 4 -

justice to remain in office. Mark an "x" before the word "NO" if you do not wish the justice to remain in office.)"

"23-4510.2. Form of ballot on retention of incumbent district court judge. In the event there is no candidate for the office of district court judge in a judicial district of the state other than the incumbent, the name of the incumbent shall be placed on the official ballot for the general election as follows:

"Shall judge (here the name of the incumbent judge of the district court is inserted) of the district court of the _____judicial district of the state of Montana be retained in office for another term in office?

"/___/ YES

"/___/ NO

"(Mark an "x" before the word "YES" if you wish the judge to remain in office. Mark an "x" before the word "NO" if you do not wish the judge to remain in office.)"

The crux of the issue before us is the meaning of the second sentence of subdivision (2) of Article VII, Section 8, 1972 Montana Constitution. Specifically, does it mean that all incumbent district judges and supreme court justices who are unopposed must run on an approval or rejection ballot in the general election? Or does it mean that those incumbents initially appointed by the Governor and subsequently confirmed by the state senate must run on this basis?

The same rules of construction apply in determining the meaning of constitutional provisions as apply to statutory construction. State ex rel. Cashmore v. Anderson, 160 Mont. 175, 500 P.2d 921, cert.den. 410 U.S. 931, 93 S.Ct. 1372, 35 L Ed 2d 593; Vaughn & Ragsdale Co. v. State Board of Equal., 109 Mont. 52, 96 P.2d 420; State ex rel. Dufresne v. Leslie, 100 Mont. 449, 50 P.2d 959; State ex rel. Gleason v. Stewart, 57 Mont. 397, 188 P. 904. In determining the meaning of a given provision, the intent of the framers is controlling. Section 93-401-16, R.C.M.

1947; State ex rel. Cashmore v. Anderson, supra. Such intent shall first be determined from the plain meaning of the words used, if possible, and if the intent can be so determined, the courts may not go further and apply any other means of interpretation. Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660, and cases cited therein.

Can the intent of the provision be determined by the plain meaning of the words used? The second sentence of subdivision (2) reads:

> " * * * If there is no election contest for the office, the name of the incumbent shall nevertheless be placed on the general election ballot to allow voters of the state or district to approve or reject him. * * *"

The key word is "incumbent". Is it used in the same sense that it is used in the preceding sentence of the subdivision to refer to a judge or justice appointed by the Governor to fill a vacancy and subsequently confirmed by the state senate -- "If, at the first election after senate confirmation, and at the election before each succeeding term of office, any candidate other than the incumbent justice or district judge files for election to that office, the name of the incumbent shall be placed on the ballot * * *" and in the following sentence of the subdivision -- " * * * If an incumbent is rejected, another selection and nomination shall be made." Or, on the other hand, is it used to refer to any incumbent irrespective of initial election or appointment? (Emphasis added.)

In common usage, the word "incumbent" means "a person who is in present possession of an office * * *." Black's Law Dictionary 4th Ed. Rev. It is not limited, qualified or restricted by the method by which one attained the office. Thus, if the second sentence of the subdivision is isolated from the first and third sentences of the subdivision, the language could mean that all incumbent

district judges and supreme court justices who are unopposed must run on an approval or rejection ballot in the general election.

On the other hand, if we construe the language in the context of the entire subdivision a contrary result can be reached. The word "incumbent" in the first or preceding sentence of the subdivision clearly refers to an incumbent appointed by the Governor to fill a vacancy as provided in subdivision (1) because such incumbent is the only incumbent subject to confirmation by the state senate. Likewise the third and final sentence of subdivision (2) can only refer to an incumbent appointed by the Governor to fill a vacancy as provided in subdivision (1) because such incumbent is the only rejected incumbent for which another selection and nomination is possible. Thus the word "incumbent" in the second sentence of subdivision (2) has the same meaning as the word "incumbent" in the other two sentences of the subdivision, and the language means that unopposed incumbent district judges and supreme court justices originally appointed by the Governor to fill a vacancy as provided in subsection (1) must run in the general election on an approval or rejection ballot.

Accordingly, we hold that the language of the second sentence of subdivision (2), Article VII, Section 8, 1972 Montana Constitution, is ambiguous. As the language itself is not clear, we must resort to extrinsic rules of construction.

Perhaps the best indication of the intent of the framers is found in the explanatory notes as prepared by the Constitutional Convention. These provide in pertinent part, following Article VII, Section 8, 1972 Montana Constitution:

"Convention Notes

"Revises 1889 constitution * * * Contested election

> of judges is not changed, however if a judge
> in office does not have an opponent in an election
> his name will be put on the ballot anyway and the
> people asked to approve or reject him * * *."

This expresses the intent of the delegates to the Constitutional

Convention and the meaning they attached to the new constitution

they framed and adopted. It plainly shows that the approval or

rejection ballot was intended to apply to any unopposed judge

in office.

Legislative determination of constitutional intent leads

us to the same construction. While such determination is not

binding on this Court, it is entitled to consideration. Here

the legislature had no difficulty in determining that the intent
                                         Montana
of the framers of the 1972 Constitution was that all unopposed

incumbent judges and justices were subject to approval or re-

jection by the voters. The legislature subsequently enacted imple-

menting legislation to that effect, sections 23-4510.1 and 23-4510.2,

R.C.M. 1947. It is presumed that the legislature acted with

integrity and with an honest purpose to keep within constitutional

limits. Sutherland, Statutory Construction, 4th Ed., Vol. 2A,

Sec. 45.11, p. 33, and cases cited therein.

The principle of reasonableness in construction of an

ambiguous constitutional provision also aids us in determining

the intent of the framers here. This principle applies equally

to construing constitutional provisions or statutes and has been

defined and explained in these words:

> "It has been called a golden rule of statutory
> interpretation that unreasonableness of the
> result produced by one among alternative possible
> interpretations of a statute is reason for re-
> jecting that interpretation in favor of another
> which would produce a reasonable result. It is
> said to be a 'well established principle of
> statutory interpretation that the law favors
> rational and sensible construction.'" Sutherland,
> Statutory Construction, 4th Ed., Vol. 2A, Sec.
> 45.12, p. 37, and cases cited therein.

Montana has adopted this principle by statute, section 49-134,

R.C.M. 1947.

While we do not consider petitioner's contended con-
struction will lead to "absurd results" within the meaning of
State ex rel. Ronish v. Sch. Dist. No. 1, 136 Mont. 453, 348
P.2d 797, no rational basis nor reason has been suggested to
us and we perceive none for requiring unopposed incumbent
appointees to run on an approval or rejection basis in each
succeeding election, while exempting other unopposed incumbent
judges or justices from this requirement. In our view, such a
construction leads to an unreasonable result, while the alterna-
tive construction simply promotes the desire of the framers to
subject all district judges and supreme court justices to approval
or rejection by the voters whenever they run unopposed.

Public Policy favors a like construction. A recognized
authority on statutory construction has used this language:

> "Statutes regulating the rights of citizens to
> vote are of great public interest and, therefore,
> are interpreted with a view to securing for
> citizens their right to vote and to insure the
> election of those officers who are the people's
> choice." Sutherland, Statutory Construction, 4th
> Ed., Vol. 3, Sec. 71.15, p. 366, and cases therein
> cited.

This Court has heretofore applied this public policy in favor
of the citizen's right to vote in construing a statute provid-
ing for absentee ballots. Maddox v. Board of State Canvassers,
116 Mont. 217, 149 P.2d 112. This same public policy applies
with equal force in construing subsection (2), Article VII,
Section 8, 1972 Montana Constitution.

For the foregoing reasons, we hold that the intent of
the constitutional delegates collectively in using the word
"incumbent" in the second sentence of subdivision (2), Article
VII, Section 8, was that it apply to all unopposed district
judges and supreme court justices irrespective of how they
originally attained their judicial offices. We therefore construe

- 9 -

the meaning of that subdivision to require all unopposed district judges and supreme court justices running for election or re-election to be placed on the general election ballot to allow voters of the state or district, as the case may be, to approve or reject him. Accordingly, we hold sections 23-4510.1 and 23-4510.2, providing for retention or rejection of such justices or judges constitutional.

We remark in passing that we have not relied on the minutes of the Constitutional Convention proceedings as indicative of the intent of the delegates. We have purposely refrained from using this basis of interpretation as excerpts from various portions of these minutes, among other things, can be used to support either position, or even a third position, i.e. that the delegates simply did not address the specific problem involved in this case. In the final analysis, the collective intent of the delegates can best be determined by application of the preceding rules of construction to the ambiguous language used in subsection (2), Article VII, Section 8, 1972 Montana Constitution, and approved by the delegates.

We have considered the other arguments of relator and the other rules of construction cited. We have determined that none would change our decision herein. To set each forth in detail herein would serve no useful purpose. The applicable rules and reasons for our decision are set forth above.

This opinion constitutes a declaratory judgment that sections 23-4510.1 and 23-4510.2, R.C.M. 1947, are constitutional and apply to every unopposed incumbent district judge or supreme court justice running for election or re-election.

_____
Justice

- 10 -

We concur:

_John Conway Harrison_
Justice

_Edward T. Dussault_
Hon. Edward T. Dussault, District
Judge, sitting in place of Mr.
Chief Justice James T. Harrison.

Mr. Justice Wesley Castles:

I concur with the majority except that I do not view the Legislative determination of constitutional intent as being persuasive. Other than to indulge in the presumption of constitutionality of legislation, I do not give great weight to that principle.

_Wesley Castles_
Justice

Mr. Justice Gene B. Daly dissents and will file a written dissent at a later date.