No. 90-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA, ex rel., MARC RACICOT,
ATTORNEY GENERAL FOR THE STATE OF MONTANA,

        Relator,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, in and
for the County of Lewis & Clark, and the
HONORABLE THOMAS C. HONZEL, District Judge,

        Respondent.

**FILED**

APR 13 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Elizabeth S. Baker, Asst. Attorney General, Helena

    For Respondent:

        Garth B. Jacobson, Chief Counsel for Secretary of
        State, Helena, Montana
        Patrick E. Melby, Helena, Montana

Submitted: March 29, 1990

Filed:

_____
        Clerk

Justice John C. Sheehy, dissenting:

On March 29, 1990, this Court issued an order reversing a mandamus issued by District Judge Thomas C. Honzel, in cause no. ADV-90-187, in the First Judicial District, Lewis and Clark County, entitled "Gene Huntley, applicant v. Mike Cooney, Secretary of State of Montana, respondent and the State of Montana, intervenor-respondent." The reversal order of this Court is indefensible for the reasons set out below.

It is difficult to speak in restrained language about the Court's incomprehensible ruling. We had an opportunity to make sense out of Constitutional and statutory laws and to serve the public policy in support of the State Constitution. Instead, the majority have muddied the election process applying to appointees to judicial offices, and have created mischief that will take years to undo.

The effect of the majority order is to change the State Constitution to make a ten-year term out of a justice's eight-year term; and eight-year terms out of two district court six-year terms. The majority have deprived the public from electing or rejecting the incumbents in those offices in this election year, 1990, and instead have postponed the voters' decision on these incumbents until 1992.

The further affect of the majority order is that in 1992, a justice will be elected for a term of six years instead of eight years, and that two district court judges will be elected for a term of four years instead of six years.

The majority have accomplished these eccentric results in spite of their duty to interpret the State Constitution and the statutes enacted thereunder in a workable and just fashion, and in conformance with the intention of the constitutional delegates.

In State ex rel. Ronish v. School District No. 1, 136 Mont. 453, 460, 348 P.2d 797 (1960), this Court said in interpreting the Constitution:

We hold the latter to be the proper interpretation. It is immediately seen that the provision does not read "all children at any time upon reaching their sixth birthday." Other provisions of the constitution only require three months of school. The legislature has required six months. Obviously the framers of the Constitution could not have meant all children at any time upon reaching their sixth birthday must be admitted. They must also have had in mind a thorough system. It would be very easy to cite examples of absurd results if such a liberal interpretation were made. Statutory or constitutional construction should not lead to absurd results if a reasonable construction could avoid it. (Emphasis in original and added.)

It is not enough to state as Art. III, § 29 of the Constitution does: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." The Constitution must receive a broad and liberal interpretation consistent with the purpose of the framers and people adopting it. (Citing authority.)

The Constitutional delegates in 1971 spoke out loudly that holders of judicial office should be exposed to electoral review. Not only are such officers required to run for election at the expiration of their terms, but if they are unopposed by any candidate for further term of office, their names still must be on the ballot for retention or rejection. This extraordinary requirement focused on the delegates' purpose that the exercise of judicial power was subject to the scrutiny of the voters and subject to their approval or rejection. The majority in this case have frustrated that purpose.

FACTS

Justice L. C. Gulbrandson resigned in August of 1989, the position he held as Justice, Seat No. 1, Montana Supreme Court. The Hon. Diane G. Barz of Billings was duly appointed by the Governor to fill the vacancy. The term of office for the seat

3

began on the first Monday of January, 1983, and would ordinarily expire at midnight preceding the first Monday of January, 1991, eight years later. The legislature has not met in the interim between the appointment of Diane G. Barz and the final date for election filing, March 22, 1990, for aspirants to the judicial position beginning the first Monday in January, 1991. Thus, the State Senate has not had an opportunity to confirm or reject the gubernatorial appointment of Justice Barz.

On March 14, 1990, well before the closing date for filing, Gene Huntley, an attorney from Baker, Montana, submitted to the Secretary of State, Mike Cooney, a declaration of nomination for the office of Associate Justice of the Supreme Court of the State of Montana, Seat No. 1, presently held by Justice Diane G. Barz. Relying on a 1987 opinion of the Attorney General, 42 Op. Att'y Gen. No. 31 (1987), the Secretary of State rejected Huntley's nomination petition on the ground that the position was not eligible to be placed on the ballot in 1990.

On March 16, 1990, Huntley filed an application for a writ of mandamus in the District Court, First Judicial District, Lewis and Clark County, requesting that the court order the Secretary of State to place the position on the ballot. Huntley v. Cooney, ADV 90-187, First Judicial District Court, Lewis and Clark County. The State of Montana sought and was granted leave to intervene without objection. The matter was briefed by all parties and argued before the District Court on March 20, 1990. The District Court issued its ruling from the bench following the hearing, ordering that the

4

declaration of nomination from Huntley be accepted as filed by the Secretary of State and determining in effect that the position was open for election and eligible to be placed on the ballot in 1990. Because of the lateness of the decision, the District Court extended the filing deadline from March 22, 1990 to March 30, 1990 at 5:00 p.m. Following the order of the District Court, the Secretary of State accepted the filings of both Gene Huntley and Diane G. Barz for the same Supreme Court seat. The oral mandamus order of the District Court encompassed not only the seat on the Supreme Court but the seats of District Court judges whose situations are similar to that of Diane G. Barz.

Following the issuance of the oral mandamus order by the District Court, the Attorney General filed in this cause in this Court his petition for writ of supervisory control that the mandamus order be vacated. Briefs were supplied, oral argument occurred on March 29, 1990, and on the same date, this Court issued its order vacating the mandamus granted in the District Court.

## AMBIGUITY

Art. VII, § 8(1), provides:

Selection. (1) The governor shall nominate a replacement from nominees selected in the manner provided by law for any vacancy in the office of supreme court justice or district court judge. If the governor fails to nominate within thirty days after receipt of nominees, the chief justice or acting chief justice shall make the nomination. Each nomination shall be confirmed by the senate, but a nomination made while the senate is not in session shall be effective as an appointment until the end of the next session. If the nomination is not confirmed, the office shall be vacant and another selection and nomination shall be made. (Emphasis added.)

5

The Attorney General contends that the underlined sentence in the foregoing provision of the Montana Constitution is clear and unambiguous. It is indeed as far as it goes. If the subsection alone were the only consideration with respect to the term of office of the appointee, there should be no difficulty. The trouble is the Constitution itself becomes ambiguous on this subject. The statutes enacted by the legislature become inoperable. This Court stated in Jones v. Judge, 176 Mont. 251, 255, 256, 577 P.2d 846, 849 (1978), that:

> The Constitution must be considered as a whole. State ex rel. Livingstone v. Murray (1960), 137 Mont. 557, 354 P.2d 552. All of the provisions of the Constitution bearing upon the same subject matter are to receive appropriate attention and be construed together. Cottingham v. State Board of Examiners (1958), 134 Mont. 1, 328 P.2d 907.

At least two provisions of the State Constitution raise an ambiguity when considered in connection with Art. VII, § 8(1). They are Art. VII, § 7(2) and Art. VII, § 8(2).

Art. VII, § 7(2), provides:

> (2) Terms of office shall be eight years for supreme court justices, six years for district court judges, four years for justices of the peace, and as provided by law for other judges.

Moreover, Art. VII, § 8(2), states:

> (2) If, at the first election after senate confirmation, and at the election before each succeeding term of office, any candidate other than the incumbent justice or district judge files for election to that office, the name of the incumbent shall be placed on the ballot. If there is no election contest for the office, the name of the incumbent shall nevertheless be placed on the general election ballot to allow voters of the state or district to approve or reject him. If an incumbent is rejected, another selection or nomination shall be made. (Emphasis added.)

6

In Keller v. Smith, 170 Mont. 399, 553 P.2d 1002 (1976), the Court determined the validity of statutes which require the name of any unopposed incumbent justice or judge to be placed on the ballot for retention or rejection by the voters under the language of subsection (2) of Art. VII, § 8, foregoing. In that case, the Supreme court determined that the second sentence of subdivision (2) was ambiguous and proceeded to construe it based on extrinsic rules of construction. Relying on convention notes from the constitutional convention, on the legislative determination of the meaning of the constitutional provision because it enacted the statutes, and on the principal of reasonableness, as well as on public policy, the Supreme Court decided that every incumbent holding a judicial office, whether by appointment or election, if at election time no other candidate for his or her judicial office appeared, had to face retention or rejection at an election by the voters.

Let us first consider the effect of the language in the first sentence of subdivision 8(2). It states "if, at the first election after senate confirmation, and at the election before each succeeding term of office, any candidate other than the incumbent justice or district judge files for election to that office, the name of the incumbent shall be placed on the ballot." The Attorney General would have us concentrate only on the phrase "at the first election after senate confirmation," and ignore the second phrase, "at the election before each succeeding term of office." The term of office which the appointee holds in this case will expire on

7

the first Monday of January, 1991 (§ 3-2-103, MCA). The elections before the "succeeding term of office" are the primary and general elections of 1990. Properly construed, subdivision 8(2), requires an appointee to run at the first election after senate confirmation, _and_ also at the election before each succeeding term of office, if he or she wishes to remain in office. The Attorney General in brief contends that the word "succeeding" can only refer to the phrase "after senate confirmation," but that construction is grammatically strained. The word "succeeding" is the present participle and verbal noun of the verb "succeed" and hence is an adjective in this case. Webster's International Dictionary, (2d ed. 1934). As an adjective, "succeeding" modifies the noun "term" which follows immediately.

It is probable that the constitutional framers, in using the word "incumbent" throughout subdivision 8(2) intended that word to apply both to appointed _and_ elected holders of judicial office. But even if we accept the dictum in Keller v. Smith, supra, 170 Mont. 399, 553 P.2d 1002, that the first sentence of subdivision 8(2) refers to an incumbent appointed by the governor to fill a vacancy, the first sentence clearly requires the appointed incumbent to face an election when two events occur: (1) "at the first election after senate confirmation" _and_ (2) "at the election before each succeeding term of office." Under Art. VII, § 7(2), a term of office is eight years for a supreme court justice, or six years for a district court judge. When a term of office expires, through the passage of time, the next term of office is a

"succeeding term of office." Quite obviously, an appointee, holding a judicial position, the term of office of which expires before the appointee's senate confirmation, meets the second event contained in the first sentence of subdivision 8(2) and must stand for election for the succeeding term of office.

## CASE CONSTRUING SUBDIVISION 8(2)

Such a holding would not conflict with the holding of Jones, supra, because of the different factual situation that existed in Jones from that existing in the case at bar. Jones concerned the appointment of Justice Frank I. Haswell to the unexpired term of Chief Justice created by the appointment of then Chief Justice Paul G. Hatfield to the United States Senate.

Chief Justice Hatfield was elected for an eight year term in 1976, a term of office that would expire on the first Monday in January, 1985. To fill the judicial vacancy created by Hatfield's acceptance of appointment to the United States Senate, the governor appointed then Justice Frank I. Haswell to be Chief Justice of the Supreme Court in 1978. The appointment of Chief Justice Haswell was confirmed by the State Senate at its regular session in 1979, and in the elections of 1980, Chief Justice Haswell successfully ran and was elected to serve the balance of the unexpired term. He served until the first Monday of January, 1985 and did not seek re-election for the succeeding term.

Jones also applied to the appointment of John C. Sheehy, as Associate Justice to fill the vacancy created when Justice Haswell accepted the office of Chief Justice. The Hon. Frank I. Haswell

9

had been elected in 1974 to the office of Associate Justice of the Montana Supreme Court for an eight year term, which would expire on the first Monday, in January of 1983. On the appointment of Haswell as Chief Justice, John C. Sheehy was appointed on April 17, 1978 to the vacant office of Associate Justice, and was confirmed by the State Senate at its regular session in 1979. In the elections of 1980, John C. Sheehy successfully ran for the balance of the unexpired term. Two years later, in 1982, in the elections before his succeeding term, Justice Sheehy was re-elected for a further eight year term.

Thus, under Jones the appointments and subsequent elections of Chief Justice Haswell and Justice Sheehy fully complied with the mandate of the State Constitution. In each case, their appointments were effective until confirmed by the State Senate, and in each case, they faced election after Senate confirmation for the unexpired term of their offices. The vital factor which distinguishes the cases of Chief Justice Haswell and Justice Sheehy under Jones from the case at bar is that their terms of office did not expire before their confirmation by the State Senate. Thus Jones did not consider the full application of Art. VII, 8(2), because the problem presented in this case was not presented to the court in Jones. The second event of subdivision 8(2) was not an issue.

We have cited foregoing, the case of Keller. It was in that case that the Montana Supreme Court determined that all incumbents in judicial office, appointed or elected, to which the constitution

10

applied, must face election before the expiration of their term of office and, if no opponent appeared, the incumbent's name must still be submitted to the voters for retention or rejection. There would be no inconsistency between Keller and a holding by this Court that an appointee, though unconfirmed by the Senate, must face election immediately before the expiration of the term of office to which he or she has been appointed. The reason is again that in Keller, this Court was not faced with the precise problem presented here.

## TENURE AND TERM OF OFFICE

The brief of the Attorney General contends that an appointee to a judicial term unconfirmed by the State Senate nevertheless continues to hold office until Senate confirmation can be obtained, regardless of the expiration of the term of office which the appointee holds. The effect, the Attorney General states, is that the holding over "merely shortens the tenure of the successor."

Such a contention goes against express constitutional provisions and statutes enacted under those constitutional provisions.

We would concede that the cases cited by the Attorney General in brief support his argument that an appointee holding over on an expired term of office, if constitutionally permitted, shortens the tenure of the successor of the same office.

The key words foregoing are "if constitutionally permitted." Neither this Court nor the legislature can act to shorten the terms of office provided in the Constitution. In the case at bar, under

11

the argument of the Attorney General, if the appointee is not confirmed until the regular session of the legislature in 1991, the appointee will hold office until the completion of the elections in 1992. Thus, the "succeeding term of office" up for election in 1992, will be for six years instead of eight years. This contravenes Art. VII, § 7(2) that terms of office for Supreme Court justices shall be for eight years. Further, Art. VII, § 8(2) requires election "before each succeeding term of office" and not before a succeeding "tenure of office." Art. II, § 1 of the Montana Constitution requires that all political power be vested in and derived from the people.

There is no statutory support that a Justice of the Supreme Court may run for a <u>shortened</u> term. Our statutes provided:

> 3-2-101. <u>Number, election and term of office.</u> The Supreme Court consists of a Chief Justice and six associate justices who are elected by the qualified electors of the state at large at the general state elections next preceding the expiration of the terms of office of their predecessors, respectively, <u>and hold their offices for the term of eight years</u> from and after the first Monday in January next succeeding their election. (Emphasis added.)

It is especially on this point that the principle of reasonableness in construction of the State Constitution applies, as this Court enunciated in <u>Keller</u>, supra:

> The principle of reasonableness in construction of an ambiguous constitutional provision also aids us in determining the intent of the framers here. This principle applies equally to construing constitutional provisions or statutes and has been defined and explained in these words:
>
> "It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible

12

> interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. It is said to be a 'well established principle of statutory interpretation' that the law favors rational and sensible construction." Sutherland, <u>Statutory Construction</u>, Vol. 2A, sec. 45.12, p. 37 at cases cited therein.
>
> Montana has adopted this principle by statute, section 49-134, R.C.M. 1947 [§ 1-3-233, MCA].

<u>Keller,</u> 553 P.2d at 1007.

The only reasonable construction of the constitutional provisions and the statutes enacted thereunder respecting judicial vacancies is that the appointment to fill the vacancy is effective if unconfirmed by the Senate, only to the expiration of the term of office where the vacancy occurred.

What has been said foregoing, applies equally to vacancies which occur in the offices of District Court judge. There is, however, an additional qualification for a district court judge in Art. VII, § 9(4). A district judge is required to reside in his district "during his term of office." This requirement reinforces the argument that a judicial officer holds office for a set term of years and is not granted additional "tenure" to which his residency would not apply.

Another factor not considered by the Attorney General is imminent and important. There is no doubt that the Governor will call the legislature into special session sometime during the month of May, 1990. At that session, the names of judicial appointees must be submitted to the Senate for confirmation, else the appointments fail, the offices become vacant, and additional vacancy appointments must be made. Art. VII, § 8(1). Assuming

13

that all the appointees are confirmed by the State Senate, they will be required to face election for their unexpired terms or their succeeding terms of office under subdivision 8(2). The ruling from this Court that prevents other candidates from placing their names in nomination violates Art. II, § 1, that all political power is vested in the people.

The problem in this case arises out of this clause:

If, at the first election after senate confirmation, and at the election before each succeeding term of office, any candidate other than the incumbent justice or district judge files for election to that office, . . .

The foregoing quote is a clause because it contains a subject and a predicate. It is a dependent clause because it cannot stand alone. "If" is a subordinate conjunction introducing a condition. The condition is "if . . . any candidate . . . files for election to that office." When may the opponent file? "At the first election after senate confirmation." When else? "And at the election before each succeeding term of office." The last two quoted phrases are adverbial, in that they modify or explain the verb "files."

The conditional clause, in whole, relates only to the opposing candidate. The action to be taken to create the condition can be taken only by an opposing candidate. The adverbial phrases modify only the action to be taken by an opposing candidate. The adverbial phrases fix the times when an opposing candidate may file for the judicial office. If at one or both of those times an opposing candidate does file, the conditional clause is satisfied. In the case at bar, the conditional clause has been met. Huntley

14

has filed for election against an incumbent "at the election before" the "succeeding term of office."

The "term" now held by Justice Barz expires on midnight preceding January 7, 1991. The "succeeding term" begins on January 7, 1991, following midnight. In 1990, the primary and general elections precede the "succeeding term." The Attorney General, and in effect this Court, acknowledge that the term of office now held by Justice Barz does expire at midnight preceding January 7, 1991. By some sort of "tenure" not provided for in the Constitution or in the statutes, the majority hold that Justice Barz continues in office for an additional two years, after the 1992 elections.

Under the Montana Constitution, Art. VII, § 7(2), and the applicable statute (§ 3-2-101, MCA), the term of office for a justice on the Supreme Court is eight years. Section 3-2-101, MCA, provides that persons elected hold their offices for a term of eight years. Yet, in 1992, barring vacancies in the interim, the Chief Justice seat will be open for an eight year term, Seat No. 3 will be open for an eight year term, but the candidates filing for Seat No. 1 will serve only six years. This is the odd result of the majority's refusal to harmonize the state constitutional and statutory provisions in the light of public policy, and the evident intent of the Constitutional framers.

Another oddity: There will certainly be a special session of the legislature held in May of 1990, this year. That special session will precede both the primary and general elections of 1990. Within ten days after the meeting of the legislature, the

Governor must transmit to it a list of all appointments made by him during the recess of the legislature (§ 5-5-301, MCA). The appointments made by the Governor are only "effective as an appointment until the end of the next session." (Art. VII, § 8(1)). "At the first election after Senate confirmation" if a candidate files for election to that office, an election must occur for the succeeding term. Art. VII, § 8(2). Thus, the express intent of the legislature will be voided by the majority holding in this case because now no election will be held.

The Attorney General contends that the word "election" in the State Constitution means something else besides "election." He contends it means the process, that is the filing for nomination, the publication of the ballots and so on. Contra: State ex rel. Wulf v. McGrath (1940), 111 Mont. 96, 106 P.2d 183. Obviously, when it suits their purposes, the Attorney General and the majority find no trouble inserting additional words into the Constitution. Forgotten, of course, is that Gene Huntley filed in time for nomination to the office. Thus, the right of Gene Huntley, as a citizen and lawyer, to offer himself for election and to contest the office of Seat No. 1, in an election of the people is effectively denied until 1992.

On the other hand, if Justice Barz were not confirmed by the legislature, in special session in May, the office she holds would become vacant and another selection and nomination must be made. (Art. VII, § 8(1)). Under the holding of the majority, Gene Huntley will still be frustrated in his effort to contest the

16

office by election, for the new appointee, under the holding in the majority, would hold over "by tenure" and not by term of office, until 1992.

Another oddity: the seat on the Supreme Court now held by Justice John C. Sheehy will expire on January 7, 1991. He has announced his intention not to seek re-election, and has not filed for the office. Two state lawyers, each eminently qualified, have filed properly for election to that seat. Yet, if John C. Sheehy should resign on or about June 1, 1990, or for other reasons, the seat became vacant before the expiration of his term, a vacancy would occur which would be filled by the judicial selection process and appointment by the Governor. Because the legislature is not likely to meet after May, 1990, the appointee, under the contention of the Attorney General and the holding of the majority in this case, would hold office until 1992, in spite of the fact that two qualified lawyers have filed for election to the new term that should begin January 7, 1991. A holding that permits such a possible result is simply absurd.

There are many cases, of course, that hold that an officer whose term has expired continues in office until his successor is qualified. In every case, this result occurs because of specific language contained either in the Constitution or the empowering statute that the appointed person serves until the successor is elected or appointed and qualified. It has always been the law in Montana that such specific language will be required in order to grant tenure beyond the expired term. For example, in Marcellus

17

v. Wright, 61 Mont. 274, 285, 202 P. 381 (1921), the Montana court stated:

> From these authorities it is clear that the term for which Judge Briscoe was elected was definitely fixed, and as definitely limited to the last minute of the day next preceding the first Monday in January following the general election at which his successor was elected. This is so because the law will not tolerate the thought that the tenure of office can begin or end at a time other than that fixed by the authority creating the office, or in any manner other than that so provided. When the duration of the term is specified in the statute, and an officer is elected to serve out the term, his power and authority thereupon _ipso facto_ cease, _unless he is authorized by some specific provision of organic law to hold over._ (Citing authority.)
>
> Where the latter words are omitted, there is no right by which the incumbent can hold over the next general election, because the law favors the requirement that all officers, whenever possible, shall be elected by the people. (Citing authority.) This is evinced by the care exercised by all legislative bodies to guard against lapses, where holding over is not deemed necessary or desirable for the public good. "Hence the provisions fixing the terms of judicial officers must be held to be exclusive, with the result that vacancies occur by operation of law upon the expiration of the terms designated." (Citing Montana authority.) If the language employed were of doubtful meaning, that interpretation which limits the term to the shortest time should be adopted. (Citing authority.)
>
> A careful reading of the entire Constitution reveals the remarkable fact that the declaration found in section 12 of Article VIII [1889 Constitution], prescribing that "the terms of district judges shall be four years" is all that is said in that instrument upon the subject. To reach a conclusion which satisfies the judicial mind and responds directly to the will of the convention, the Constitution and the ordinances attached to the former must be carefully examined for words best fitted to furnish the needed light. The provisions of section 7 of the same Article, fixing the terms of the members of this court, present an analogy of some service in solving the problem. It reads, "The term of office of the justices of the supreme court, except in this Constitution otherwise provided shall be six years." Then, in the next section, which provides the time to choose those first to be elected, will be found these

18

words: "At [the] first election the Chief Justice shall be elected to hold his office until the general election in the year one thousand eight hundred and ninety-two (1892), and one of the associate justices to hold office until the general election in the year one thousand eight hundred and ninety-four (1894); and the other associate justice to hold his office until the general election in the year one thousand eight hundred and ninety-six (1896), and each shall hold until his successor is elected and qualified."

It will be noted that in each of the instances above, the word "until" is used with the evident purpose of limiting each term to a definite period of time; and, bearing in mind the exigencies always to be apprehended from defective election machinery, and public inconvenience attending vacancies in public office, there was added the following: "And each shall hold until his successor is elected and qualified." In section 9 of the same Article, too, we find the same exactness of expression in fixing the term of the clerk of this court, and the point in time and circumstance to which he should hold office. As further evidence plainly visible, the terms for which all state officers, except judicial officers, shall hold are limited in section 1 of the same Article VIII to four years, "beginning on the first Monday in January next succeeding" the general election following. While that section does not affect judicial officers, the language does serve to make all the other elective officers of the state begin their official duties at the same instant. So that, the words employed in section 6 of Ordinance No. 2, that "the terms of officers so elected shall begin when the state is admitted into the Union, and shall end on the first Monday in January, 1893," affect neither the intent nor object apparent throughout the Constitution and the ordinances to bring to a close the terms of district judges at 12 o'clock midnight preceding the first Monday in January following the election in presidential years. This construction makes complete harmony in the matter of the beginning and ending of the terms of all the state officers, without in the least shading the meaning of any of the language contained in either enactment.

The statute providing for an additional district judge in the tenth judicial district, and declaring that the appointee of the governor shall hold "until the first Monday in January, 1919," is entitled to respectful consideration by the courts. (Citing cases.) And unless the time fixed by statute is so plainly at odds with that prescribed in the Constitution as to be wholly inconsistent with it, it is the duty of the court to give

19

it such a construction as will enable it to have effect. Or to go a little further, when the conflict between the Act and the Constitution is not clear, <u>the implication must always be that no excess of authority has been intended by the legislature</u>, and that the seeming differences can be reconciled. The court will not go beyond the face of the law to seek grounds for holding it unconstitutional. (Emphasis added.)

There are no specific provisions or exact words granting tenure beyond the term of office in the Constitution. The majority reversed this established tenet of the law, and now hold, because in their eyes, the plain language of the Constitution does not require an unconfirmed appointee to stand for election, tenure is granted. Thus does the majority stand on its head the longstanding rule that no excessive authority has been intended by the legislature or the constitutional framers.

Finally, the majority in this decision acknowledge that their holding is not in conformance with public policy. They must so acknowledge, because in Yunker v. Murray, 170 Mont. 427, 434, 554 P.2d 285 (1976), this Court relied on such public policy in interpreting the same provision of the Constitution:

Additionally, public policy supports our construction. In <u>Keller</u>, we quoted a recognized authority:

"Statutes regulating the rights of citizens to vote are of great public interest, and, therefore, are interpreted with a view to securing for citizens their right to vote and to insure the election of those officers who are the people's choice. (Citing authority.)"

We apply this principal to Art. VII, § 8(2), 1972 Mont. Const., in the context of the issue before us in Keller. We apply it here for the same reasons and with the same result.

It is divisive and disharmonious for this Court to oppose public policy in its decisions. In this case, the result is

20

absurdity. The harm and error will not be undone until eight years from the elections in 1990, even should the Constitution in the meantime be amended.

What is said foregoing applies equally to the affected appointed district judges except that their term of office is usually for six years.

_____
Justice John C. Sheehy


I concur in the foregoing dissent.


_____
District Judge
Roy C. Rodeghiero,
sitting for Justice
William E. Hunt, Sr.