No. 96-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

MONTANA DEPARTMENT OF ADMINISTRATION,

Petitioner and Respondent,

v.

LAURIE EKANGER, Commissioner of Labor and
Industry, Montana Department of Labor and Industry;
THE LABORERS INTERNATIONAL UNION OF
NORTH AMERICA-MONTANA DISTRICT COUNCIL
OF LABORERS; INTERNATIONAL UNION OF
OPERATING ENGINEERS; UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA;
EDSALL CONSTRUCTION COMPANY; and
BERNARD CONSTRUCTION COMPANY,

Respondents and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Daniel B. McGregor, Department of Labor and Industry, Helena, Montana

Karl J. Englund, Attorney at Law, Missoula, Montana

For Respondent:

Kelly A. Jenkins, Department of Administration, Helena, Montana

Submitted on Briefs: March 27, 1997

Decided:   August 7, 1997
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


Laurie Ekanger (Ekanger), Commissioner of Labor and Industry of the State of Montana, appeals from the First Judicial District Courtþs order which reversed the Department of Laborþs order awarding þheavyþ and þhighwayþ pay rates to workers constructing underground tunnels at Montana State University (MSU).  We reverse the decision of the District Court and remand for determination of appropriate compensation consistent with þheavyþ and þhighwayþ rates under the Little Davis-Bacon Act,   18-2-401 et seq., MCA.

We address the following issue on appeal:
Are the Edsall and Barnard tunnels "heavy" construction projects under Montana's Little Davis-Bacon Act,   18-2-401(5), MCA ?


BACKGROUND

Montana law divides prevailing wage classifications for laborers into three categories:  heavy construction, highway construction and other types of construction (i.e., building).  Wages for heavy and highway workers are set at one rate in Montana and wages for "other" (building) workers are set at a second rate.  Sections 18-2-401 (5) and (7), MCA, provide:

(5)  "Heavy and highway construction wage rates" means wage rates, including fringe benefits for health and welfare and pension contributions, that meet the requirements of the Employee Retirement Income Security Act of 1974 and other bona fide programs approved by the United States department of labor and travel allowance that are determined and established statewide for heavy and highway construction projects, such as alteration or repair of roads, streets, highways, alleys, runways, trails, parking areas, or utility rights-of-way.

. . . .

(7) (a)  "Standard prevailing rate of wages" or "standard prevailing wage" means:
(i)  the heavy and highway construction wage rates applicable to heavy and highway construction projects; or
(ii)  those wages, other than heavy and highway construction wages, including fringe benefits for health and welfare and pension contributions, that meet the requirements of the Employee Retirement Security Act of 1974 and other bona fide programs approved by the United States department of labor and travel allowance that are paid in the district by other contractors for work of a similar character performed in that district by each craft, classification, or type of worker needed to complete a contract under this part. In each district, the standard prevailing rate of wages is a weighted average wage rate based on all of the hours worked on work of a similar character performed in the district.

The instant case involves the appropriate prevailing wage for laborers working on two separate construction projects at MSU. Specifically, this case involves a dispute as to whether construction workers should receive the þheavyþ construction wage which is generally $3.00 to $4.00 per hour greater than the building construction wage rate. The first of these projects was formally known as þUnderground Utility Phase II, Montana State University.þ For purposes of brevity, this project will be referred to as the þBarnard Tunnelþ as it was eventually constructed by Barnard Construction. The second project was officially known as the þEngineering/Physical Sciences Building, Utility Tunnel.þ This project will be referred to as the þEdsall Tunnelþ as Edsall Construction Company contracted to build this second tunnel.

At MSU, many of the buildings are heated with steam from a central heating plant. Steam is carried in underground pipelines to buildings connected to the plant. Both the Edsall and Barnard Tunnels were constructed to house steam and condensate pipes in order to protect them from degradation and make them more accessible for maintenance and repair. The Edsall and Barnard Tunnels are of similar design and are entirely underground. Inside both tunnels are metal frames used to support the steam and condensate pipelines and electrical overhead lights. Neither tunnel has a heating or cooling system, windows, flooring or internal finished walls or any plumbing, plumbing system or bathrooms.

While the Edsall and Barnard Tunnels were being constructed, the Labor Standards Bureau of the Montana Department of Labor and Industry (Department) received an inquiry from Laborersþ International Union of North America, Montana District Council of Laborers (Laborers) concerning the appropriate wage rate for construction on the tunnels. In addition, the Department received a number of complaints from individual construction workers employed on these two projects. Following an investigation, the Department determined that these projects were not conventional buildings and, therefore, should have been classified as þheavyþ construction projects for purposes of determining the appropriate prevailing wage. The Department made the following finding:

[A] review of the projectþs nature distinguishes it from a building. Few, if any, buildings in Montana are entirely underground, and in the case of the Barnard portion extend over approximately 600 yards through a major portion of the university campus. Few, if any buildings, lack windows, any type of conventional roofing, living or storage space, internal wood or steel framing (other than the utility support structures), doors, plumbing, and heating or cooling systems. Few, if any buildings, have an internal drainage system (gutters) in case of flooding through excess ground water or sump pump failure. Few, if any buildings, are constructed entirely of concrete and reinforcing steel. Indeed, few, if any buildings, are built entirely within the confines of a continuous trench running approximately 600 yards in length, an estimated 60 feet in width at ground level . . . . This is not a building in any conventional sense of the word.

After coming to the above conclusion, the Department found the contracting agency, the Architecture and Engineering Division of the Montana Department of Administration (AEDMDA), was responsible for back pay and future pay resulting from the wage differences. AEDMDA filed an appeal of the Departmentþs determination and a contested case hearing was held before a Department hearing officer Joseph V. Maronick (Maronick). Maronick entered findings of fact, conclusions of law and an order which affirmed the Departmentþs determination and directed AEDMDA to compensate construction workers at the þheavy constructionþ wage rate. AEDMDA appealed this decision to the District Court.

After each party briefed and orally argued this matter, the District Court issued an order reversing the Departmentþs determination. The District Court held that the Department had misapplied Montanaþs Little Davis-Bacon Act, 18-2-401(7), MCA, and that its decision to award þheavy constructionþ wages was erroneous. Ekanger, in her position as Commissioner of the Department of Labor and Industry, appeals from the District Courtþs order.

## DISCUSSION

Are the Edsall and Barnard tunnels "heavy" construction projects under Montana's Little Davis-Bacon Act, 18-2-401(5), MCA?

We are called upon to review the District Court's application of the Little Davis-Bacon Act to the undisputed facts of this case. The standard of review of a district courtþs conclusions of law is whether the courtþs interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; see also Kreger v. Francis (1995), 271 Mont. 444, 898 P.2d 672; Steer, Inc. v. Depþt of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

Montana's Little Davis-Bacon Act defines three categories of wage rates: heavy construction, highway construction and "other" types of construction. Sections 18-2-401(5) and (7), MCA. The District Court held that this statute was unambiguous and explained that the Barnard and Edsall tunnel projects did not qualify as "heavy or highway" construction under 18-2-401(5), MCA, which defines "heavy and highway construction wage rates" as applying to:

projects, such as alteration or repair of roads, streets, highways, alleys, runways, trails, parking areas, or utility rights-of-way.

In interpreting the above statute, the court reasoned that, with the exception of "utility rights-of-way," the examples given all relate to roads and highways. The projects in question were obviously not in the nature of a road or highway. The appellant, however, argues that the projects are "utility rights-of-way." In response to this argument, the court noted that, although the term "utility rights-of-way" is not defined in Title 18, it is defined in Title 60 as:

"Right of way" is a general term denoting land, property, or any interest in land or property, usually in a strip, acquired for or devoted to highway

purposes.

Section 60-1-103(23), MCA. The court also relied on the definition of "right of way" in Black's Law Dictionary 1326 (6th ed. 1990) as,

a right belonging to a party to pass over land of another, but it is also used to describe that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it.

Based upon these definitions of "right of way," the court concluded: "Simply stated, a 'right of way' is only an interest in the land or the use of the land, and does not include utilities or other projects located on it." Since the tunnel projects were not road related and were not "utility rights-of-way" (i.e. interests in land), the court concluded that the tunnels "do not fit within any of the enumerated examples" of heavy or highway construction. We determine that the District Court 's use of this definition of "utility rights-of-way" in the context of the Little Davis-Bacon Act is erroneous. It makes no sense to define "utility rights-of-way," as that term is used in 18-2-401(5), MCA, as "only an interest in land." The relevant portion of 18-2-401(5), MCA, includes "utility rights-of-way" in its examples of "heavy and highway construction projects." (Emphasis added.) An "interest in land" cannot be considered as an example of a "project" in any sense of the word. An interest in land exists by virtue of law; it is not "constructed" through wage labor. As used in 18-2-401(5), MCA's list of projects, "utility rights-of-way" clearly denotes something that is built or constructed through labor. Furthermore, a utility right-of-way is something other than a road or a highway. The District Court erred in concluding that 18-2-401(5), MCA, has application only to matters related to roads or highways. It applies as well to projects in which "utility rights-of-way" are constructed through labor.

In construing any statute, the goal is to ascertain and implement the legislatureþs intent. Burritt v. City of Butte (1973), 161 Mont. 530, 508 P.2d 563. Where the language of a statute is plain and unambiguous, there is nothing left for a court to construe. Keller v. Smith (1976), 170 Mont. 399, 553 P.2d 1002; Dunphy v. Anaconda Co. (1968), 151 Mont. 76, 438 P.2d 660. Section 18-2-401(5), MCA, requires heavy and highway construction rates for projects:

such as alteration or repair of roads, streets, highways, alleys, runways, trails, parking areas, or utility rights-of-way.

The use of the phrase þsuch asþ in listing projects requiring heavy construction wage rates reflects an intent that the list be inclusive rather than exclusive.  Section 18-2-401(5), MCA, is unambiguous in its inclusion of "utility rights-of-way" in the heavy and highway project classification.

The Edsall and Barnard Tunnels are "utility rights-of-way" projects in which tunnels were constructed to house steam and condensate pipes in a protected underground corridor to provide heat to buildings on the MSU campus.  As such, these projects are among the enumerated projects considered as "heavy construction" under  18-2-401(5), MCA.

In summary, we hold that the Little Davis-Bacon Act heavy and highway construction wage rate clearly is not restricted to projects which are road or highway related.  Rather, this wage rate has application to "heavy" projects involving utility rights-of-way such as the Edsall and Barnard Tunnels.  The decision of the District Court is reversed and the matter is remanded for determination of appropriate back pay.


/S/   W. WILLIAM LEAPHART


We concur:

/S/   JAMES C. NELSON
/S/   WILLIAM E. HUNT, SR.
/S/   TERRY N. TRIEWEILER




Justice Karla M. Gray, specially concurring.



I concur in the result reached by the Court, namely, that the construction workers on the Edsall and Barnard Tunnel projects are entitled to be paid at heavy and highway construction wage rates.  I do not agree with all that is said by the Court in reaching that result or with the Court's approach to the statutory definition of "heavy and highway construction wage rates."

I do agree with the Court that the "such as" language in the  18-2-401(5), MCA, listing of projects requiring heavy and highway construction wage rates reflects a legislative intent that the list be inclusive rather than exclusive.  Stated differently, the "such as" list is merely illustrative of the types of projects properly designated "heavy and highway construction" projects.  That being the case, it is unnecessary for the Court to

"force feed" the Edsall and Barnard Tunnel projects into one of the actual categories listed in 18-2-401(5), MCA, and that approach results in a somewhat strained interpretation that these projects are "utility rights of way."

Given the inclusive rather than exclusive listing contained in 18-2-401(5), MCA, all that is necessary to conclude that the workers in this case are entitled to heavy and highway construction wage rates is to establish that the projects are of the same type or nature as those listed in the statute. Here, that is a relatively easy task. The projects involved the demolition of existing, and construction of new, sidewalks and roads. Thus, in the language of the statute, they can be likened to heavy and highway construction projects involving "alteration or repair of roads, streets. . .[or] trails. . . ." More importantly, they involved underground tunnel work much more similar to utility pipeline and power line projects than to conventional building construction projects for which heavy and highway construction wage rates are not required. In addition, of course, the formal names of the Edsall and Barnard Tunnel projects--"Engineering/Physical Sciences Building, Utility Tunnel" and "Underground Utility Phase II, Montana State University," respectively--reflect that the projects were utility-type projects. That the projects were not located on utility rights of way does not change the nature of the projects.

I would conclude that the Edsall and Barnard Tunnel projects are of the same type and nature as the projects listed in 18-2-401(5), MCA, for which heavy and highway construction wage rates are required. For that reason, I join the Court in reversing the District Court.


/S/ KARLA M. GRAY